24 F.3d 369
 146 L.R.R.M. (BNA) 2086, 127 Lab.Cas. P 11,083
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, Plaintiff-Appellant-Cross-Appellee,
v.
METRO-NORTH COMMUTER RAILROAD, Defendant-Appellee,
Transport Workers Union, Local 2001,
Defendant-Appellee-Cross-Appellant.
 Nos. 1151, 1465, Dockets 93-9011, 93-9037.
 United States Court of Appeals,
Second Circuit.
 Argued March 16, 1994.
Decided April 18, 1994.
As Amended May 10, 1994.
 
 Michael S. Wolly, Washington, DC (Zwerdling, Paul, Leibig, Kahn, Thompson & Driesen, P.C., Washington, DC); Paul G. Reilly, Jr., New York City (Reilly & Gatti, New York City), for plaintiff-appellant-cross-appellee.
 James J. McEldrew, III, Philadelphia, PA (Smith, McEldrew & Levenberg, P.C.), for defendant-appellee-cross-appellant.
 Before: TIMBERS, McLAUGHLIN and SPROUSE,* Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 International Association of Machinists and Aerospace Workers ("IAM") appeals from a judgment entered in the Southern District of New York (Thomas P. Griesa, C.J.) vacating National Railroad Adjustment Board ("NRAB"), Second Division, Award 12397 on due process grounds. See International Assoc. of Machinists and Aerospace Workers v. Metro-North Commuter R.R. and Transport Workers Union, Local 2001, 829 F.Supp. 95 (S.D.N.Y.1993). Transport Workers Union ("TWU") cross-appeals from that part of the judgment ordering Metro-North to "continue the status quo, with IAM members in place, until and unless there is a contrary ruling by the NRAB or further order of the court."
 
 
 2
 For the reasons stated below, we affirm the judgment of the district court.
 
 BACKGROUND
 I. The pre-NRAB proceedings
 
 3
 In 1987, Metro-North Commuter Railroad opened a repair shop in Brewster, New York to consolidate the servicing of its trains in that area. Prior to opening the new shop, two different unions had performed the servicing at separate Brewster locations: (1) machinists, represented by IAM, and (2) carmen, represented by TWU. When the new shop opened, Metro-North decided to eliminate the old positions held by the IAM and TWU workers and to create new ones. Metro-North then unilaterally assigned 60% of the new jobs to TWU, and 40% to IAM. Both unions complained to Metro-North about the failure to negotiate the division of jobs at the new site.
 
 
 4
 The Railway Labor Act ("RLA") established the NRAB to resolve disputes between railroads and unions. 45 U.S.C. Sec. 153 First (h). The RLA, however, also permits railroads and unions to form their own adjustment boards, unconnected to the NRAB, to resolve disagreements. 45 U.S.C. Sec. 153 Second. The statute makes the awards of these adjustment boards just as enforceable in the district courts as awards made by the NRAB. Id.
 
 
 5
 For reasons known only to the parties, Metro-North decided to deal with each union separately. Accordingly, Metro-North and IAM entered into arbitration before an adjustment board (the "IAM board") over the job allocation. Metro-North and TWU also entered into arbitration over the same issue in front of a different adjustment board (the "TWU board").
 
 
 6
 The inevitable occurred. The IAM board ruled that Metro-North's failure to negotiate with IAM and/or TWU over the division of labor at the new shop was unlawful. The TWU board, by contrast, ruled that Metro-North's assignment of 40% of the work at the new shop to IAM machinists violated Metro-North's contract with TWU. Metro-North announced that it would comply with the TWU decision and assign all work to TWU carmen.
 
 
 7
 This, of course, did not please IAM, which sued Metro-North and TWU for injunctive and declaratory relief. In its suit, IAM essentially sought to have the district court overturn the TWU board's decision. The District Court for the Southern District of New York denied IAM's request, but directed Metro-North, IAM and TWU to submit their disputes to the NRAB for arbitration. TWU appealed, but this Court dismissed the appeal in an unpublished order for lack of jurisdiction. International Assoc. of Machinists and Aerospace Workers v. Transport Workers Union, Local 2001 and Metro-North Commuter R.R., 956 F.2d 1160 (1992). The parties then went to the NRAB.
 
 II. The NRAB proceedings
 
 8
 NRAB's Second Division, which has jurisdiction over disputes involving railroad employees, has ten partisan members: five management members appointed by the railroads and five labor members appointed by national railroad unions. Mark Filipovic was one of the labor members of the Second Division. Filipovic was also an IAM employee and, indeed, signed IAM's brief to the Second Division. Unlike IAM, TWU did not have a voting representative on the NRAB because TWU is not a national labor organization.
 
 
 9
 In accordance with the RLA, the Second Division referred the case to a subpanel of two of its members to conduct hearings and make findings. The subpanel included Filipovic and a management member, and not surprisingly, they immediately deadlocked the dispute, which was then referred to a neutral referee for a hearing and resolution.
 
 
 10
 The members of the Second Division, including Filipovic, attended the hearing. The referee eventually awarded all the jobs to IAM. At a subsequent meeting of the Second Division, the six members present (three management, three union) voted to formally adopt the referee's ruling. Filipovic had no part in that meeting.
 
 
 11
 Metro-North complied with the NRAB award, and gave all the jobs to members of the IAM. TWU then petitioned the district court to set aside the NRAB award on the ground that it was tainted by Filipovic's role in the proceeding. The district court granted the petition, holding that Filipovic's involvement in the NRAB arbitration violated TWU's due process rights. The court ordered the parties to return to the NRAB. International Assoc. of Machinists and Aerospace Workers v. Metro-North Commuter R.R. and Transport Workers Union, Local 2001, 829 F.Supp. 95, 97-98 (S.D.N.Y.1993). The district court, however, ordered Metro-North to leave the IAM members in place until a contrary ruling by the NRAB or the district court. Id. at 98.
 
 
 12
 IAM now appeals from the district court's order setting aside the NRAB award. TWU cross-appeals from that part of the order leaving the IAM members in place.
 
 DISCUSSION
 I. IAM's appeal
 
 13
 The RLA specifies three grounds upon which a district court may set aside an award by the NRAB: (1) failure of the NRAB to comply with the provisions of the RLA; (2) failure of the NRAB to remain within its jurisdiction; and (3) fraud or corruption by a member of the NRAB. 45 U.S.C. Sec. 153 First (q). None of these grounds applies here, as there is no evidence of fraud or corruption by Filipovic. The issue, therefore, is whether these grounds are exclusive.
 
 
 14
 As noted in our recent opinion in Shafii v. PLC British Airways and International Assoc. of Machinists and Aerospace Workers, AFL-CIO, District Lodge 100, 22 F.3d 59 (2d Cir.1994), some circuits have interpreted the enumeration of these three grounds as a bar to any other grounds for judicial review of an NRAB award. However, this Circuit adheres to the majority view that due process affords a fourth ground for judicial review. See id.; Brotherhood of Maintenance of Way Employees v. St. Johnsbury & LaMoille County R.R./MPS Associates, Inc., 794 F.2d 816, 818-19 (2d Cir.1986).
 
 
 15
 At least since the time of Lord Coke, (Nemo debet esse judex in propria causa--no one may be a judge in his own case), a fundamental precept of due process has been that an interested party in a dispute cannot also sit as a decision-maker. See, e.g., Withrow v. Larkin, 421 U.S. 35, 46-47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); Gibson v. Berryhill, 411 U.S. 564, 578-79, 93 S.Ct. 1689, 1697-98, 36 L.Ed.2d 488 (1973); Wolkenstein v. Reville, 694 F.2d 35, 38-39 (2d Cir.1982). It may be true, as IAM asserts, that the award in this dispute was made by a neutral referee, not the Second Division on which Filipovic sits. It may also be a fact of life that the Second Division always refers railway labor disputes to a subpanel, the subpanel always deadlocks, and the dispute is always settled by a neutral referee. Nevertheless, Filipovic was both an IAM employee and a voting member of the NRAB division empowered to decide the Metro-North/IAM/TWU dispute. He signed IAM's brief to the Second Division. Moreover, he was one of the two members of the subpanel formed to make findings in the dispute, and he actually voted to deadlock the dispute and to send it to a referee. Thus, at crucial stages in this star-crossed proceeding, Filipovic sat as both interested party and decision-maker, in violation of due process. It is no less important that justice appear to be done than that justice be done.
 
 
 16
 Accordingly, the district court's decision that Filipovic's involvement constituted an unacceptable conflict of interest rising to the level of a due process violation is affirmed.
 
 II. TWU's cross-appeal
 
 17
 TWU's cross-appeal, although convoluted, is ultimately meritless. We address it only briefly.
 
 
 18
 TWU asserts that the two adjustment board decisions, preceding the NRAB arbitration, are not in conflict: the IAM board found that Metro-North was obligated to negotiate with the unions over the division of labor at the new shop; and the TWU board found that TWU was entitled to all of the work at the new shop. TWU maintains that the district court, therefore, should never have directed the two unions and Metro-North to submit their dispute to the NRAB. Instead, the district court should have enforced both adjustment board decisions--and awarded all the Brewster jobs to TWU. TWU concludes that since the NRAB award has now been overturned, this Court should enforce the TWU adjustment board decision, award all the jobs to TWU, and vacate the district court's order leaving the IAM members in place.
 
 
 19
 The RLA directs that adjustment board decisions be enforced when the parties have agreed to resolve their dispute in that manner. 45 U.S.C. Sec. 153 Second. Here, IAM was not a party to the contract between Metro-North and TWU pursuant to which the TWU board was established. IAM never appeared or participated in the proceeding before the TWU board. As a result, the TWU board never heard IAM's side of the dispute. Thus, there is no basis for holding IAM to the TWU board's decision. The district court, in its discretion, properly ordered Metro-North to leave the IAM members in place pending further order by the NRAB or the court.
 
 CONCLUSION
 
 20
 The judgment of the district court is affirmed.
 
 
 
 *
 Honorable James M. Sprouse of the United States Court of Appeals for the Fourth Circuit, sitting by designation