In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1867

Sheila R. Bew, Rainier Conley,
Walter Griffin, et al.,

Plaintiffs-Appellants,

v.

City of Chicago and Illinois Local
Government Law Enforcement
Officers Training Board,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 1488--Rebecca R. Pallmeyer, Judge.

Argued January 18, 2001--Decided May 15, 2001

   Before Bauer, Manion, and Diane P. Wood,
Circuit Judges.

   Bauer, Circuit Judge.  Plaintiffs,
probationary police officers discharged
for failing the Illinois Law Enforcement
Officers Certification Examination,
complain that the exam as administered by
the defendants, the City of Chicago and
the Illinois Local Government Law
Enforcement Officers Training Board, had
a disparate impact on African-American
and Hispanic (hereafter "minority")
officers in violation of Title VII. The
parties agree that plaintiffs established
prima facie disparate impact. This appeal
focuses on whether the City and the Board
established that the minimum passing
score and the rule that probationary
officers pass the exam in three tries
("three strikes rule") satisfied the
business necessity standard. We believe
that the defendants met their burden of
showing business necessity and we affirm
the district court's decision.
I.  Background

   The Board is charged under state law to
enforce the Illinois Police Board
Training Act 50 ILCS 705/1 by setting
minimum standards for the training of

police officers. As part of its efforts, the Board created an exam for probationary officers. After their graduation from the police academy, officers are assigned regular job duties on a probationary basis until they pass the exam. The City administered the exam on a voluntary basis in exchange for additional training monies until 1996, when the exam became mandatory under Illinois law. Plaintiffs are nine of the failing African-American officers.

To develop the certification exam, the Board hired Justex Systems Inc., consultants with experience in peace officer training. Justex surveyed active officers and their supervisors to determine the knowledge and skills essential for entry-level police officers. It then developed performance objectives, and a training curriculum for the police academy, and designed the certification exam to test the new curriculum. Justex employed a multi-step process when developing the exam. Justex designed a multiple-choice exam, each question having four potential answers. It created an 800 question pool. Each question had four possible answers. Justex tested the questions on graduating recruits for six months. After analyzing the results, Justex modified the questions, eliminating or changing some because they were misleading and some because minorities disproportionately chose the wrong answer.

Justex then tackled the task of setting the minimum passing score. Justex created exams which allotted to various subjects the same emphasis they were given in the police academy curriculum. Justex pre-tested the exam on recent graduates who had studied the new curriculum and on incumbent officers who had two to five years of experience on the police force. For minimum score purposes, Justex considered only the incumbent officers' pre-tests and determined that the average exam score was 145.43 (rounded to 145) out of 200. To effectuate the dual goals of ensuring that probationary officers possessed the requisite knowledge and to avoid failing too many graduates, thereby wasting money that the City had invested in recruit training, Justex determined that the pre-test failure rate should be no higher than 30%.

Justex contacted other police certification boards to determine how they set their minimum scores. Most used standard deviations. Applying this method, Justex calculated that the standard deviation for the incumbents' pre-test scores was 13 points. Setting the passing score at one deviation below the pre-test mean resulted in a cut-off score of 132, or 66% correct. Using this minimum passing score, only 19.6% of the pre-tested incumbent officers failed the exam. Further, Justex was confident that the pass rate of the actual test-takers would exceed that of the incumbent police officers because the real test-takers would (1) be recent graduates, (2) be familiar with the new police curriculum, which the certification exam was specifically designed to test, and (3) possess a strong motivation to study and put forth true effort while taking the exam. After some debate about using a 70% cut-off score, the Board adopted Justex's recommendation for the minimum passing score of 132 or 66%. Probationary officers had three chances to pass the certification exam. The score acted as an absolute cut-off, not a rank-ordering. In some years, all recruits passed the exam.

From January 1990 until February 1998, only 33 of 5,181 probationary officers, less than 1%, failed the exam. Thirty-two, or 97%, of the failing officers were minorities despite the fact that minority officers only comprised approximately 50% of probationary officers. The over-all pass rate for African-Americans was 98.24% as compared to 99.96% for whites.

The City moved for summary judgment arguing that the comparative pass rate of 98.24% for African-Americans legally precluded a finding of disparate impact. Under EEOC guidelines, disparate impact is deemed established if minority pass rates are 80% or less than the pass rate for non-minorities. See 29 C.F.R. sec. 1607.4(D). The district court properly noted that the 80% guideline may be ignored when other statistical evidence indicates a disparate impact. See id. The district court found that the "test for difference between independent proportions" yielded a Z-score more than five standard deviations from the norm, and that this statistic established prima facie disparate impact. The City renewed

its motion for summary judgment, arguing that even if plaintiffs could establish a prima facie case of disparate impact discrimination, the City was entitled to summary judgment because the exam and its minimum passing score were business necessities. Again, the district court denied summary judgment and the case proceeded to a trial before the court. At trial, the defendants presented testimony from Thomas Jurkanin, the Board's executive director, who explained how the Board developed the certification exam. He testified that the Board did not have confidence in probationary officers who could not obtain a score of 132. Further, Dr. Larry Hoover, co-owner of Justex, testified. He explained that there is no scientific way to determine a cut-off score which will separate "good" officers from "bad."

The district court ruled that plaintiffs established a prima facie case of disparate impact discrimination, thereby shifting the burden to defendants to prove that the exam and cut-off scores were business necessities. The court found that defendants successfully shouldered their burden because the exam bore a manifest relationship to the job, and the cut-off score was "reasonable, justified and consistent with professional standards."

II.  Discussion

Title VII employs a burden-shifting approach for disparate impact claims:

(1)(A)  An unlawful employment practice based on disparate impact is established under this subchapter only if--

(i)  a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii)  the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

42 U.S.C. 2000e-2(k). Plaintiffs chose to proceed under the first option. The district court correctly found that the certification exam created a disparate impact based on race. Defendants do not contest this finding. Our analysis there fore focuses solely on whether defendants have rebutted the prima facie showing by proving that the cut-off score and three strikes rule were job related business necessities.

The 1991 Civil Rights Act codifies the concepts of business necessity and job relatedness "enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), and in other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989)." Pub.L. 102-166 sec. 3. Griggs does not distinguish business necessity and job relatedness as two separate standards. It states that: "The touchstone is business necessity. If an employment practice which operates to exclude [a protected group] cannot be shown to be related to job performance, the practice is prohibited." 401 U.S. at 431. To satisfy the standard, an employment test must "bear a demonstrable relationship to successful performance of the jobs for which it was used." See id. We review the district court's decision for clear error.

A.  Cut-off Score

The law further refines the business necessity and job related test to apply to cut-off scores. We use the EEOC's standard: "Where cut-off scores are used, they should normally be set so as to be reasonable and consistent with normal expectations of acceptable proficiency within the work force." 29 C.F.R. sec. 1607.5(H). The district court correctly summarized this standard when it stated: "the Certification Exam 'must be scored so that it properly discriminates between those who can and cannot perform the job well.'" Bew v. City of Chicago, 2000 WL 343495 at *6 (N.D. Ill. Mar. 31, 2000) (citing Thomas v. City of Evanston, 610 F. Supp. 422, 429 (N.D. Ill. 1985)). Explaining how cut-off scores can meet the business necessity requirement, we previously stated that cut-off scores pass muster if, for example, they are based on "'a professional estimate of the

requisite ability levels, or, at the very least by analyzing the test results to locate a logical 'break-point' in the distribution of scores.'" Gillespie v. Wisconsin, 771 F. 2d 1035, 1045 (7th Cir. 1985) (quoting Guardians Ass'n of New York City v. Civil Serv. Comm'n, 630 F.2d 79, 105 (2d Cir. 1980)).

Defendants have shown that the cut-off score is "reasonable and consistent with normal expectations of acceptable proficiency within the work force." The exams mirrored the content and emphasis of the police academy curriculum, creating a correlation between a probationary officer's score and her mastery of the knowledge necessary to be a police officer. Further, Justex adequately ensured the reliability of the exam by pre-testing and modifying questions based on the pre-test results. See Bryant v. City of Chicago, 200 F.3d 1092, 1099 (7th Cir. 2000). To determine the cut-off score, Justex engaged in more pre-testing to determine how incumbent officers performed. Although Justex began considering the standard deviation method of setting cut-off scores because it was an industry standard, Justex explored whether the method met the Board's and City's needs. Particularly, the score satisfied the City's desire to certify only well-trained officers as well as the financial reality that the City had finite training funds and required adequate numbers of officers for staffing purposes. Indeed, given that the overall passing score exceeded 99%, we cannot conclude that plaintiffs' demand to be reinstated is reasonable. To reduce a cut-off score to the point where all test-takers pass likely renders the test a futile exercise because it ceases to act as a measuring device. The cut-off score met the business necessity and job relatedness standard.

Plaintiffs contend the certification exam's cut-off score is arbitrary because it does not separate probationary officers who will adequately perform their jobs from those who will not. As proof, plaintiffs point out that the probationary officers were performing their probationary police duties satisfactorily. However, we do not hold cut-off scores to standards so strict that they must select all good job performers and reject all bad. See

Guardians Ass'n of New York City, 630 F.2d at 90. Such a standard would be nearly impossible for any test to meet.


## B. Three Strikes

Plaintiffs did not challenge the "three strikes rule" explicitly before the district court. Although the three strikes analysis in plaintiffs' brief occasionally appears geared toward the cut-off score, we assume that the "three strikes rule" argument references the requirement that probationary officers pass the certification exam in three tries or less. The City argues that plaintiffs' "three strikes" argument is waived. The City is technically correct that the three strikes argument is new. However, when a new argument supports a claim made before the district court, we will usually address it. See Yee v. City of Escondido, 503 U.S. 519, 534-35 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). Challenging the passage requirement generally is not a separate claim from contesting the minimum passing score. Both are arguments in support of the claim that the certification exam as administered violates Title VII. Of course, a party cannot add new facts to the record, but here, the three strikes argument grows out of the facts presented to the district court.

The three strikes argument is inextricably connected with the validity of the certification exam and the propriety of the minimum score. Plaintiffs readily admit and the district court correctly found that the certification exam was job related and content valid. In light of this finding and our holding that the cut-off score was appropriate, it stands to reason that defendants may require probationary police officers to pass the certification exam. In other words, requiring plaintiffs to pass an exam, which, despite its disparate impact, is in all ways permissible under Title VII, comports with the business necessity and job related standards. See Griggs v. Duke Power Co., 401 U.S. at 436 ("Nothing in the Act precludes the use of testing or measuring procedures; obviously they are

useful. What Congress has forbidden is giving these devices and mechanisms controlling force unless they are demonstrably a reasonable measure of job performance."). Defendants' generous policy of allowing probationary officers three opportunities to pass the exam does not impact the legal result.

For the foregoing reasons, we AFFIRM the district court's decision. Like the district court, we find it unnecessary to address whether the Board is an employer for the purposes of Title VII because the plaintiffs have not otherwise sustained their Title VII suit.