CHICAGO, ROCK ISLAND AND PACI-
FIC RAILROAD COMPANY,
Plaintiff-Appellee,

v.

Eugene E. WELLS, Defendant-
Appellant.

No. 73-1685.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1974.

Decided July 9, 1974.

Rehearing Denied July 31, 1974.

———◆———

Harold A. Sanford, Jr., Chicago, Ill., for defendant-appellant.

Emory D. Curlee, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, SPRECHER, Circuit Judge, and STECKLER, District Judge.*

HASTINGS, Senior Circuit Judge.

In October, 1964, plaintiff Chicago, Rock Island and Pacific Railroad Company (Railroad) discharged defendant Eugene E. Wells from his position of conductor for having violated certain operating rules. Wells conceded the violation and did not then challenge his discharge pursuant to the collective bargaining agreement in force. Months later he sought a leniency reinstatement which the Railroad denied. Thereafter, in October, 1967, Wells filed an *ex parte* submission with the First Division of the National Railroad Adjustment Board (Division) making claim for reinstatement and full compensation, alleging his discharge to have been wrongful and unjust.[1]

Under procedures followed by the Division at that time, the Railroad had 30 days to reply to Wells' claim. This time was subject to being extended automatically for three consecutive periods of 30 days each upon request made to the Executive Secretary of the Division. The Division had delegated this authority to

---

* Chief Judge William E. Steckler of the Southern District of Indiana is sitting by designation.

1. This is the third occasion on which issues arising out of Wells' discharge have come before this court. See Chicago, Rock Island & Pacific R. Co. v. National Mediation Board, 7 Cir., 435 F.2d 339 (1970), cert. denied, 402 U.S. 944, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971); Wells v. Order of Railway Conductors & Brakemen, 7 Cir., 442 F.2d 1176 (1971).

the Executive Secretary by formal resolution on June 15, 1954. It was exercised by the Executive Secretary and his Administrative Assistant by regularly granting extensions of time to parties in the conduct of the internal administrative affairs of the Division. However, the Division had no formal rule regulating the manner in which requests for extensions of time should be made.

The Railroad requested and was granted two extensions of time to reply to Wells' claim, the second of which expired on January 29, 1968. The Railroad prepared a request for a third extension which was dated January 29, 1968, and incorporated it in a letter of that date. There is a dispute as to whether the letter was mailed on the 29th or 30th. However, it is undisputed that the postage meter mark on the letter was dated January 29th and that the official Post Office postmark thereon was dated January 30th. The Division received the letter on January 31st.

The Division went by the postmark of January 30th and ruled that the Railroad's request was not timely made, being deemed to be one day late. The request was accordingly denied. The Division concedes that if this letter had been postmarked January 29th, instead of January 30th, the extension would have been granted as a matter of course. In short, the Railroad was defaulted because of an untimely request for the third extension of time.

The effect of the denial of the third extension was to foreclose the Railroad from appearing before the Division to contest Wells' claim. The Division does not customarily conduct hearings in disputes before it. It usually makes its decisions on the basis of the parties' written submissions, but will, upon request, hear oral arguments limited to matters contained in the written submissions. As a consequence, the Railroad was barred from presenting its written submissions of evidence, its brief, argument and citations of authority.

The Division did not consider the claim of Wells until October 3, 1968, some eight months following its rejection of the Railroad's third request for a 30-day extension. At that time the Division became deadlocked with respect to Wells' claim and, because of intervening events, the Division could not proceed further until April 23, 1970.

On January 8, 1971, the Railroad filed this action against the First Division and its members (but not against Wells) seeking to enjoin them from conducting further proceedings with respect to the claim of Wells until the Railroad had been afforded an opportunity to appear and make a full defense to the claim. The complaint was grounded upon the Railroad's claim of denial of its rights to due process under the Fifth Amendment, as well as upon the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq. Jurisdiction was asserted pursuant to 28 U.S.C. §§ 1331 and 1337. Although service of process was made on all defendants, the Division did not appear or answer the complaint. Separate appearances and answers were entered and filed by the labor members and by the carrier members of the Division.

Thereafter, in a memorandum opinion dated October 7, 1971, the district court denied the Railroad's prayer for injunctive relief on the ground that it was premature, but without prejudice to its being renewed if the Division should enter an award against the Railroad without permitting it to make a defense. The Division and its members continued to deny the Railroad the right to file its tendered submission or otherwise to present evidence in defense of the claim of Wells. Thereafter, at a hearing held in Chicago on April 17, 1972, without hearing evidence on behalf of the Railroad, an award was entered by the Division sustaining Wells' claim.

On April 24, 1972, with leave of the district court, the Railroad filed a supplemental complaint in which Wells was added as a party defendant, the prayer for injunctive relief set out in the original complaint was renewed, and a prayer was added requesting the court to review the award in accordance with Sec-

tion 3 First (q) of the Railway Labor Act, 45 U.S.C. § 153 First (q).[2] Wells appeared and filed his answer to the supplemental complaint and a counterclaim praying for enforcement of the award to him. Thereupon, the Railroad filed a motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, which was supported by affidavits.

Although the affidavits in support of summary judgment were not controverted, the district court deemed it would be a wiser course to have a full hearing where all relevant facts could be disclosed, denied the motion for summary judgment and set the matter for hearing. A full hearing was held in open court. On May 18, 1973, the district court made and entered its written findings of fact and conclusions of law and rendered judgment favorable to the Railroad.

The findings of fact stated in great detail the procedural matters above set out as well as supporting factual detail. In particular, Finding 14 is pertinent to the mailing of the request for the third extension of time, and reads:

> 14. Witnesses for plaintiff included E. E. Margason, its present chief labor relations officer, Guy E. Mallery, who, until he retired December 31, 1971, had been plaintiff's chief labor relations officer since 1938, and Jack Gilkerson and Donald C. Kraft, plaintiff's labor relations officers directly responsible for preparing and filing cases before the Division between the years 1962 through 1968. Each of them testified that he had no knowledge that the Division used a U. S. postmark date as the criterion for determining timeliness until the request for extension in the Wells's case was rejected. Mr. Margason testified that he had searched in vain the records in his department from 1934 to the present time seeking to find directions or instructions concerning timely filings with the Division, particularly with respect to the status of a postmark date. Each of them testified that he had never been informed of the practice whereby extensions of time could be arranged by telephone. Witnesses Gilkerson and Kraft who were responsible for obtaining extensions, when needed, on January 29, 1968 and for six years prior thereto, each testified that the customary practice he followed in obtaining extensions of time from the Division was to dictate a letter to the Division requesting the desired extension, and, when the letter had been typed, to sign it and deposit it in a box on his desk where it would be picked up by a clerk and carried to the company mailroom. Mr. Kraft, who requested the extension which was declined, stated that he followed the normal procedure when requesting the extension in question. Mr. John A. Szafran, the supervisor of plaintiff's mail center in

2. Section 153 First (q) reads: "If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28."

January 1968, testified with respect to the procedure for gathering company mail and delivering mail to the U. S. Postoffice in January 1968. The procedure was that each department had an employee collect the outgoing mail for the department. The mail would then be brought to the company mail center where the Chicago items would be separated from out-of-town items. It would then be run through a postage meter machine, tied into a package and put into a first-class mail bag. The mail would then be trucked to the U. S. Postoffice in Chicago, Illinois, where it was left on a Postoffice dock. The last mail left plaintiff's mail center at 5:00 o'clock p. m. No mail is, or was in January 1968, held in the company mail center overnight. None of the foregoing testimony was contradicted, and the Court finds that plaintiff made a good faith effort to make a timely request to the Executive Secretary of the Division for a third "automatic" extension which was declined.

Finding 15 deals with the evidence relating to the practice of the Division in dealing with extensions of time and reads:

15. Although plaintiff was prevented from making a defense to the claim of Wells in proceedings before the Division because of an alleged violation of the Division's unpublished "postmark rule," the evidence when viewed from the standpoint most favorable to the defendants discloses that plaintiff was at most one day late in making its request for a third automatic extension of time. The evidence also shows, however, that the Division attached so little importance to the first three authorized extensions that it authorized an employee not a member of the Division to grant them automatically without bothering the members of the Division. Moreover, the evidence discloses that the Division itself was quite free in granting additional extensions of time in cases in which the Executive Secretary had granted the three he was authorized to grant. Plaintiff's Exhibits 13, 14 and 15 reflect that on April 14, 1966 the Division granted three extensions, one of which was the twelfth and another the nineteenth. On June 5, 1970 the Division granted eight extensions, two of which were 21st extensions and five of which were 19th extensions, and on November 12, 1970 granted extensions for the eighth time in one case and for the eleventh time in another. Gene R. Johnson, a labor member of the Division and a witness for the defendants, testified that the Division has granted as many as forty extensions in some cases. The Division did not consider the claim of Wells until October 3, 1968, some eight months following its rejection of plaintiff's request for a 30-day extension. At that time the Division became deadlocked with respect to the claim of Wells, and on November 4, 1968 the National Mediation Board appointed referee John H. Dorsey of Washington, D. C. to act with the Division to break the deadlock and to enter an award. The plaintiff mailed the referee a copy of the defense it proposed to file with the Division, and for that reason referee Dorsey, having read the submission, disqualified himself. On July 12, 1971 the National Mediation Board approved the disqualification and authorized the referee to withdraw from the proceeding. Meanwhile the merger of four operating railway labor organizations represented on the Division into the United Transportation Union on January 1, 1969 caused the Division to become inactive due to a provision in the Railway Labor Act which prohibited any one union from having more than one representative on the Division. This disability of the Division continued until an amendment to the Railway Labor Act removed it, effective April 23, 1970. The Court finds that none of the defendants would have been prejudiced unfairly if plaintiff had been granted the extension of time which the Division rejected.

In its conclusions of law the district court, *inter alia*, held that the Division denied the plaintiff Railroad due process under the Fifth Amendment, (1) by arbitrarily refusing to grant the extension of time requested in plaintiff's written request dated January 29, 1968; (2) when it refused to permit plaintiff to present evidence or otherwise defend the claim of Wells at the hearing of the Division without a referee on October 3, 1968, which resulted in a deadlock; (3) when it refused to permit plaintiff to present evidence in defense to the claim of Wells at a hearing on April 17, 1972, conducted with the aid of referee Quinn; and (4) when it entered a default award on April 19, 1972 against plaintiff. The court finally concluded that the award should be set aside and remanded to the Division with directions that plaintiff be permitted to file a written submission in defense to the claim of Wells and to appear before the Division at a hearing as contemplated by Section 3 First (j) of the Act.

On May 18, 1973, an appropriate judgment order was entered for plaintiff and against the defendants, together with an order restraining the Division and its members from entering an award with respect to the claim of Wells until the procedure above ordered was carried out.

The Division itself neither entered an appearance nor answered the complaint. It appears that in connection with the consideration of the proposed findings and conclusions by the district court, by agreement of the parties all carrier and labor members of the Division were dismissed as parties defendant. Defendant Wells has appealed from the judgment order entered on May 18, 1973. We affirm.

### I.

■ Based upon our examination of the record as a whole, we find and hold that the findings of fact made by the district court are amply supported by the evidence and are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. In fact, most of the evidence was either undisputed or stipulated.

It appears that when the written request for a third automatic extension was delivered to the Division in an envelope which bore the timely postage meter date of January 29, 1968, and the one-day late postmark of January 30, 1968, the Executive Secretary referred the plaintiff's request to the Division for instructions on February 2, 1968. The Division considered the matter on February 6, 1968, declined the plaintiff's request, and instructed the Executive Secretary to inform plaintiff that its request was declined because of "a late postmark." The next day plaintiff wrote a letter of protest but to no avail.

The Division had no rule at that time adopting a United States postmark as the criterion for determining the timeliness of a request or tender. It was not until June 5, 1970, nearly two and one-half years after defaulting plaintiff, that such a rule or policy was adopted. Such new rule or policy was not made public and the evidence was that plaintiff had no knowledge of it. To find plaintiff in default without giving it an opportunity to establish that the mailing was timely, or if not, whether there were sufficient extenuating circumstances to warrant granting the extension, is at best harsh action and at worst inexcusable.

It further appears from the record that on a number of occasions in 1966 extensions were granted or filings were accepted when the requests made were clearly late. On other occasions reply submissions were accepted when received late in envelopes bearing illegible postmarks. Another late request was granted when stamped with a timely postage meter date. Other parties were permitted to obtain extensions by telephone, a practice not generally known and one that was not made known to plaintiff at that time. In short, the practice of the Division indicates that the extension would probably have been granted if the envelope had borne only the postage meter date and not the added postmark dated one day later; if the

telephone practice had been made known to plaintiff; or if the postmark on the envelope had been smeared or otherwise made illegible. Indeed, the Division is hard put to justify this illogical pattern. It certainly is not in keeping with its proclaimed policy of liberality. By contrast, it was shown in some cases extensions had been granted as many as 8, 11, 19, 21 and even 40 times.

Even more indicative of the unfairness of this review by the Division is the lack of prejudice that would have resulted if it had granted the extension, or at least have permitted plaintiff an opportunity to make its showing. Plaintiff was defaulted on February 6, 1968. The Division did not consider the claim of Wells until October 3, 1968. Because of intervening circumstances, the Division could not consider proceeding further until April 23, 1970. This litigation was not originally filed until January 8, 1971. It is clear that there can be no claim that the Division's default of plaintiff was necessary to efficiently expedite the case.

We have no difficulty in finally concluding that there is more than adequate factual support to uphold the district court's determination that in this proceeding plaintiff was denied due process of law under the Fifth Amendment.

## II.

■ Appellant Wells asserts that the district court was without jurisdiction to review the "finding of untimely filing" by the Division within the meaning of Section 3 First (q) of the Act, since such a ruling was conclusive on the parties and was not subject to review, citing Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 264–265, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); Barrett v. Manufacturers Ry. Co., 8 Cir., 453 F.2d 1305, 1307 (1972); Union Pacific R. Co. v. Price, 360 U.S. 601, 609, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); Brotherhood of Locomotive Engineers v. Louisville & Nashville R. Co., 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). However, in these cases all parties to the disputes involved were before

appropriate Divisions of NRAB and were heard either on the merits of their positions or were permitted to at least state their positions. Here, the Railroad was not even permitted to state its position. Further, in none of these cases were procedural defects of constitutional dimensions involved as in the instant case.

In Transportation-Communication Employees Union v. Union Pacific R. Co., 385 U.S. 157, 165 n. 4, 168, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), the Court held that under Section 3 First (q) the district court was empowered to remand proceedings to the Adjustment Board for lack of an indispensable party, since the Board had failed to use procedures which allow for an informed and fair understanding of the dispute between the parties.

In Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry. Co., 8 Cir., 229 F.2d 59, cert. denied, 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861 (1956), the Eighth Circuit held that an award by the Adjustment Board against the Railway Company sustaining a claim of the telegraphers to restoration of telegraphers to positions to which clerks had been assigned was void since it had been rendered without notice to members of the clerks' union and without an opportunity for them to be heard. The award was further held unenforceable for want of indispensable parties. The court cited Allain v. Tummon, 7 Cir., 212 F.2d 32 (1954), as well as other cases from the Seventh Circuit, 229 F.2d at 63–67.

In Allain v. Tummon, *supra*, a suit was brought by members of a class of railroad employees known as "lounge or tavern car attendants" to enjoin enforcement of an award by the Third Division of the NRAB to "dining car stewards" of the defendant union. The district court denied enforcement and our court affirmed. We held that the award violated plaintiffs' right to due process of law, stating in relevant part:

"It was established herein that had the plaintiffs or their union obtained the knowledge that the claim of the

dining car stewards was pending before the Board, they would not have been permitted to file a written submission, offer testimony, cross-examine witnesses, make an argument, or otherwise participate in the hearing. * * * Notice without the opportunity to be heard does not satisfy the requirements of due process." 212 F. 2d at 35–36.

In light of the foregoing, we hold that the district court had jurisdiction to review the "finding of untimely filing" by the Division within the meaning of the Act, and that the court correctly held that the plaintiff Railroad was denied due process of law.

It is not necessary for us to reach the issue raised concerning the applicability of the Administrative Procedure Act, Title 5, U.S.C. § 551 et seq. We have considered all other questions and authorities advanced by defendant, but are not persuaded thereby.

The judgment of the district court is in all things affirmed.

Affirmed.