In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2150

United Transportation Union,

Plaintiff-Appellee,

v.

Gateway Western Railway Company,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00 C 212--Michael J. Reagan, Judge.

Argued December 3, 2001--Decided March 21, 2002

  Before Posner, Evans, and Williams, Circuit
Judges.

  Posner, Circuit Judge.  A union seeks to
enforce an arbitration award made by a
Public Law Board pursuant to the Railway
Labor Act. The Act establishes a system
of compulsory arbitration of grievances
("minor disputes"), Andrews v. Louisville
& Nashville R.R., 406 U.S. 320, 322
(1972), but gives the parties a choice of
arbitral methods. Employees Protective
Ass'n v. Norfolk & Western Ry., 511 F.2d
1040, 1044 (4th Cir. 1975). One option is
arbitration by three-member panels one
member of which is appointed by the
union, one by the employer, and the
third, the "neutral" member, by the
National Mediation Board, a permanent
agency (unlike the Public Law Boards)
that administers the arbitration and
mediation processes ordained by the Act.
45 U.S.C. sec. 153 Second; Brotherhood of
Locomotive Engineers v. Atchison, Topeka
& Santa Fe Ry., 768 F.2d 914, 918 (7th
Cir. 1985); Woodrum v. Southern Ry., 750
F.2d 876, 880 (11th Cir. 1985); Jones v.
St. Louis-San Francisco Ry., 728 F.2d
257, 259-60 (6th Cir. 1984). The neutral
is appointed only if the two party-
designated arbitrators can't agree on the
resolution of the grievance, and is
appointed by the Board only if the other
two arbitrators can't agree on a neutral.
The Board appoints the neutral from a

roster of arbitrators that it maintains, and since the party members of the panel are expected to vote in accordance with their principals' wishes (though they don't always do so), it is the neutral who is the real "judge" and usually decides the case, though the award must be signed by one of the party members as well, normally of course the one in whose principal's favor the neutral has decided.

The neutral in this case was a lawyer named Fredenberger, whose distinguished record included a stint as general counsel of the National Mediation Board. The hearing on the union's grievances was held on March 9, 1999. A month later Fredenberger was charged in an information with and pleaded guilty to feloniously assisting in the preparation of a fraudulent federal income tax return. The Board learned of this and issued an order to show cause by August 27 why Fredenberger should not be removed from the roster of arbitrators. He asked for and was granted an extension to August 30 to respond. On that day he both responded to the order to show cause and signed (and within a day or two he mailed to the parties to the arbitration) his award, which generally favored the union. The next day the Board struck him from the roster, effective immediately. There is no suggestion that the Board was at fault in failing to remove him earlier.

The union member of the Public Law Board signed the award sometime after August 30, though we don't known when. The employer member refused to sign it, and the employer makes two arguments against enforcing it. The first is that it was procured by fraud, namely Fredenberger's concealment of his conviction. The Railway Labor Act empowers a district court to set aside an arbitral award if there was "fraud or corruption by a member of the [panel] making the order." 45 U.S.C. sec. 153 First (p). That is of course a ground under other arbitration statutes as well. 9 U.S.C. sec. 10(a)(1); Uniform Arbitration Act sec. 12(a)(1) (model act adopted by about 34 states); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp., 14 F.3d 1163, 1166 (7th Cir. 1994); MSP Collaborative Developers v. Fidelity & Deposit Co., 596

F.2d 247, 250 (7th Cir. 1979); Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). Despite differences in wording, these statutes are generally interpreted to mean the same thing. E.g., Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry., supra, 768 F.2d at 921.

In the usual case the fraud is against the party seeking to set aside the award, as where the arbitrator is bribed by the opposing party or fails to disclose a relationship with that party. American Postal Workers Union v. United States Postal Service, 52 F.3d 359, 362 (D.C. Cir. 1995); Pacific & Arctic Ry. & Navigation Co. v. United Transportation Union, 952 F.2d 1144, 1147–48 (9th Cir. 1991); cf. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 147–48, 149 (1968) (plurality opinion). There is no suggestion of that here. Fredenberger's criminal violation of federal tax law was unrelated to the grievances that he was asked to arbitrate, and there is no suggestion that his violation would have inclined him in favor of (or, for that matter, against) the union.

His failure to disclose his criminal conviction was, we may assume, material in the sense that one or both parties might well have decided that they did not want to have a criminal resolve their dispute. But it does not follow that it should be a basis for setting aside his award. So far as appears, the fraud was completely harmless; for there is no evidence or reason to think that Fredenberger's conviction (or events leading up to it) had the slightest effect on the award that he rendered. A judge's decisions are not voidable on the basis of an undisclosed criminal conviction, even in a capital case, Bracy v. Gramley, 520 U.S. 899, 901, 909 (1997), if the conviction had no impact on the decision, and we do not see why a stricter rule should apply in arbitration, cf. Remmey v. PaineWebber, Inc., 32 F.3d 143, 147–48 (4th Cir. 1994), especially since the standard due process entitlement to an impartial tribunal is relaxed when the tribunal is an arbitral tribunal rather than a court. Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1050 (7th

Cir. 1987); Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1983); Schmitz v. Zilveti, 20 F.3d 1043, 1046-47 (9th Cir. 1994); Morelite Const. Corp. v. New York City District Council Carpenters Beneficial Funds, 748 F.2d 79, 83 (2d Cir. 1984). A contrary rule would encourage losing parties to an arbitration to conduct a background check on the arbitrators, looking for dirt--a particularly questionable undertaking because arbitrators, unlike judges, are not subjected to background checks when appointed. It is another example of the lesser formality, and concomitant relaxation of due process norms, of arbitration in comparison to adjudication.

We do not wish to generalize prematurely, however, by holding that there can be no case in which a fraud that does not induce bias on the part of the arbitrator warrants the setting aside of the award. Suppose that a baboon cunningly dressed in human clothes fooled the National Mediation Board into appointing him the neutral arbitrator of the union's grievances. Whichever party had the stronger case would be disadvantaged by the fact that the grievance had been subjected to an essentially random decision procedure, even though the procedure was not biased (random is the opposite of biased). That party could complain that he had been defrauded. So far as appears, Fredenberger was not only an experienced arbitrator but did as careful a job of arbitrating the union's grievances as he would have done had he never violated the income tax laws.

Second, the employer argues that because Fredenberger was removed from the roster of Railway Labor Act arbitrators before the second member of the panel signed the award, there was no award. The Federal Arbitration Act is explicit that an award is unenforceable unless final, 9 U.S.C. sec. 10(a)(4); IDS Life Ins. Co. v. Royal Alliance Associates, Inc., 266 F.3d 645, 650 (7th Cir. 2001); Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 279 (7th Cir. 1992); Remmey v. PaineWebber, Inc., supra, 32 F.3d at 150, and an award that was never made (executed, perhaps, but not issued) is the best example of a nonfinal award that occurs to us. See United Steelworkers of America v. Ideal

Cement Co, 762 F.2d 837, 842 (10th Cir. 1985). We cannot think of any reason why a different rule should apply to arbitration under the Railway Labor Act, though we can find no cases on the point.

In the case of a judicial panel, moreover, the departure whether by death, resignation, retirement, or recusal of a judge before the panel's decision is formally issued operates to disqualify the judge. E.g., Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 683 n. ** (7th Cir. 2000); Whitehall Tenants Corp. v. Whitehall Realty Co., 136 F.3d 230, 232-33 (2d Cir. 1998); Dubose v. Pierce, 857 F.2d 889, 891 n. * (2d Cir. 1988) (per curiam). The quorum for a decision by a three-judge federal court of appeals panel is two, 26 U.S.C. sec. 46(d), so that if two of the three judges die or resign before the panel's decision is issued, a judge must be added to the panel before the decision can be issued. See, e.g., 11th Cir. R. 34-2. This might seem fatal to the award in this case, where the quorum was two and Fredenberger departed the scene before the second arbitrator signed the award and the third arbitrator never signed it.

But this argument fails, though not because the employer has failed to show that Fredenberger actually left the panel before the union member signed. For while the order by the National Mediation Board of August 30 removing him from the roster of arbitrators did not say it was removing him from any existing panels he was on, it is likely that he did quit the Public Law Board then. His request for an extension of time to respond to the order to show cause implies that he wanted time to complete his work on the award before he was removed from the roster.

Nor does the employer's argument fail because, as one might expect, the norms applicable to arbitration differ from those governing judicial panels and thus preclude enforcement of an award if an arbitrator leaves the panel after he has signed the award but before it has been signed by a second member of the panel. The norms are the same, though the case law establishing this proposition is sparse, Marine Products Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66, 68 (2d Cir. 1992); Czarnikow-Rionda Co. v. Buenamar Compania Naviera S.A., No. 86 Civ. 24, 1986 WL 10485, at *7 (S.D.N.Y.

Sept. 17, 1986); Cia De Navegacion Omsil, S.A. v. Hugo Neu Corp., 359 F. Supp. 898, 899 (S.D.N.Y. 1973); cf. Amalgamated Ass'n of Street Electric Ry. & Motor Coach Employees of America v. Connecticut Co., 112 A.2d 501, 505-06 (Conn. 1955), and we are hesitant to declare the issue definitively resolved. As applied to judicial panels the rule reflects the fact that before the panel's decision is issued something may happen that causes a change in mind of one or more of the judges. Ayrshire Collieries Corp. v. United States, 331 U.S. 132, 139 (1947); cf. Pastene Wine & Spirits Co. v. Alcoholic Beverages Control Comm'n, 449 N.E.2d 1235, 1236 (Mass. App. 1983). The parties are entitled to have a quorum of the judges consider the new development.

Arbitration by panels composed of party representatives and a neutral is different. Not only because of the lesser formality, of which a pertinent illustration is that arbitrators usually resign as soon as they issue their award rather than waiting till any judicial proceedings to vacate or confirm the award are completed, with the result that sometimes the arbitral panel has to be reconstituted if there is a remand by the court. Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 187 (7th Cir. 1985); Pinkerton's NY Racing Security Service, Inc. v. Local 32E Service Employees Int'l Union, 805 F.2d 470, 474 (2d Cir. 1986); see also Washington-Baltimore Newspaper Guild Local 35 v. Washington Post Co., 442 F.2d 1234, 1238-39 (D.C. Cir. 1971). But also and more important because the party representatives are not neutrals. If the neutral is the only real decision maker--if signature by the party representative of the neutral arbitrator's award in favor of that party is pro forma, a purely technical requirement--then failure to comply with the requirement is harmless and does not justify the setting aside of the award. And in that case had Fredenberger died before the union arbitrator got around to signing the award, there would be no reason to void the award, even though if a judge on a panel containing only one other judge (say because the third judge had recused himself) died before the decision of the panel was issued, the decision would be voidable.

But we are overstating the difference between arbitration and adjudication. Though the party-designated arbitrators are not neutral, each being biased in favor of the party that designated him, they are not rubber stamps. Hence Jones v. St. Louis-San Francisco Ry., supra, 728 F.2d at 262, holds "that in order to have a valid award, a majority of the [Public Law] Board must hear the parties and participate in the decisionmaking process before rendering an award." And even when they are rubber stamps, they may influence the neutral's decision in post-hearing deliberations here foreshortened by Fredenberger's resignation. "After the attorneys present their cases and the official proceedings are terminated, the partial [i.e., party-designated] arbitrators have another opportunity to attempt to persuade the neutral to rule in their client's favor." Eugene K. Connors & Brooke Bashore-Smith, "Employment Dispute Resolution in the United States: An Overview," 17 Can.-U.S. L.J. 319, 323 (1991). See also Associated General Contractors of America, Evansville Chapter, Inc. v. NLRB, 465 F.2d 327, 333 (7th Cir. 1972) ("it would take an extreme naivete about tripartite arbitration to believe that the partisan members will never attempt to reach a compromise solution after the dispute has been submitted to the panel"); Delta Mine Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 819 (8th Cir. 2001) (describing post-hearing deliberations of tripartite arbitration panel in which partisan arbitrators presented competing draft orders for consideration by the neutral); Note, "The Use of Tripartite Boards in Labor, Commercial, and International Arbitration," 68 Harv. L. Rev. 293, 304 (1954).

But this discussion leaves the issue of remedy unresolved. In the case of a judicial panel, a decision made without a quorum is void. Ayrshire Collieries Corp. v. United States, supra, 331 U.S. at 139. That is the general rule for public bodies. Appeal of Net Realty Holding Trust, 497 A.2d 865, 867 (N.H. 1985); Rock v. Thompson, 426 N.E.2d 891, 897 (Ill. 1981); Williams v. Nieman Marcus, 652 S.W.2d 893, 894 (Mo. App. 1983); Pastene Wine & Spirits Co. v. Alcoholic Beverages Control Comm'n, supra, 449 N.E.2d at 1236. But we do not think the same result should follow when an

arbitration panel lacking a quorum renders a decision. See Teamsters Local Union No. 61 v. United Parcel Service, Inc., 272 F.3d 600, 605 (D.C. Cir. 2001). Not only is arbitration less formal than adjudication, but the absence of a-party-designated arbitrator does not have the same significance as the absence of a third judge. Realistically, in most cases the absence of a party-designated arbitrator makes no difference at all in the outcome. Given these differences between arbitration and adjudication, it behooved the employer in this case to present some evidence, or at least argument, that the inability of its designated arbitrator to influence the outcome by appeal to the neutral arbitrator (he having decamped after signing his award) had an actual or at least a probable effect on the outcome of the arbitration. The employer presented neither evidence nor argument. On the contrary, such evidence as there is that bears on the issue favors the union. The neutral arbitrator apparently drafted his award without prior consultation with the party-designated arbitrators, and no further deliberations were contemplated, the signature of the union-designated arbitrator and the nonsignature of theemployer-designated arbitrator being pro forma. So far as appears, then, the error in failing to appoint a neutral arbitrator after Fredenberger resigned was completely harmless, and that being so the decision enforcing the award must we think be, and it is,

Affirmed.