In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2542

BROTHERHOOD OF LOCOMOTIVE ENGINEERS
AND TRAINMEN GENERAL COMMITTEE OF
ADJUSTMENT, CENTRAL REGION,

*Plaintiff-Appellant*,

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2401—**Virginia M. Kendall**, *Judge*.

———————

ARGUED FEBRUARY 7, 2007—DECIDED APRIL 9, 2008

———————

Before FLAUM, ROVNER, and EVANS, *Circuit Judges*.

ROVNER, *Circuit Judge*.  Five aggrieved railroad employees of the Union Pacific Railroad (Union Pacific or the Carrier) filed claims through their representatives on the Brotherhood of Locomotive Engineers and Trainmen (the Organization) in each case contesting a discharge or discipline imposed by the Carrier. Rather than resolving the dispute over the propriety of the discipline, the National Railroad Adjustment Board (NRAB or Board)

concluded that the Organization had failed to submit conclusive evidence that the parties had held a conference to attempt to resolve the dispute—a procedural prerequisite to arbitration—and thus the Board determined that it was required to dismiss the claim for lack of jurisdiction. The district court agreed. Although we agree with the district court that it has always been clear that the parties must conference, and that they must submit evidence of that fact, it heretofore has not been clear when and how that evidence must be presented. We find that the Board denied the Organization due process by requiring evidence of conferencing to be presented in the on-property record, a requirement not clearly enunciated in the statutes, regulations, or the collective bargaining agreement of the parties. Consequently, we reverse.

## I.

Grievance procedures for resolving disputes between railroads and their employees are regulated intricately under the Railway Labor Act (RLA or Act). Under the Act, railroad employees with grievances against their employers—the railroad—must first attempt to resolve those grievances through an internal process before turning to the courts. The procedure for dispute resolution is set forth in the parties' collective bargaining agreement and begins with investigations, hearings, and appeals that take place on the railroad property and are generally referred to as "on-property" proceedings. If one of the parties is dissatisfied with the result, the dispute is submitted to a conference. 45 U.S.C. § 152 Second. If the parties fail to resolve their differences in conference, an aggrieved party may initiate an arbitration proceeding before the NRAB. 45 U.S.C. § 153 First (i).

In 2000 and 2001, Union Pacific discharged or disciplined five locomotive engineers whose claims form the basis of this litigation. The Organization filed grievances and sought reinstatement, back pay, and removal of the discipline for the five engineers. The Organization then proceeded through the "on-property" process in the manner dictated by the collective bargaining agreement between the parties. Each aggrieved party had an on-property hearing before an investigating officer or superintendent of the carrier. In each case the hearings were recorded and transcribed with exhibits attached. The Carrier declined each of the claims. The parties then met in a conference in a last-chance effort to settle the case. When those efforts failed, and the Organization did not prevail, it sent letters of intent to the NRAB to initiate arbitration proceedings. In its original submission, the Organization included the on-property record which contained the notices of discipline, the hearing transcript, all of the exhibits, and all of the evidence used in the grievance procedure below relating to the merits of the underlying discharge or discipline. The Organization did not, however, include any written documentation that the parties had met in conference. The Carrier raised no objection to the Organization's submission and, in due course, presented its own counter-submission on the merits of the dispute. It did not mention the Organization's failure to include evidence that a conference had occurred.

After the parties filed their submissions, they met on March 15, 2005, for a hearing before the NRAB. Each arbitration panel of the Board consists of an equal number of members chosen by the carrier and by the labor organization. Where the panels are deadlocked, a neutral person

known as a referee sits with the panel to make an award. 45 U.S.C. § 153 First (l). As a practical matter, therefore, the outcome is usually determined by the referee. *See United Transp. Union v. Gateway W. Ry.*, 284 F.3d 710, 711 (7th Cir. 2002). Just prior to the start of the oral argument, the Carrier's representative on the panel requested an executive session of the NRAB panel, out of the presence of the Organization's representative. During that session, the Carrier's representative informed the referee that the Organization's submission to the Board did not contain any evidence of conferencing. Without such evidence, the railroad argued, the Board must draw the inference that the conferences had not occurred. The Carrier did not argue that conferencing had not occurred—indeed, it had— only that the Organization had failed to offer any evidence of it in the on-property record submitted to the Board.

The Organization's advocate offered to submit documentation that the conferences had occurred and the referee gave the Organization time to do just that. The Organization did eventually proffer proof that a conference had occurred, which included phone logs, informal notes, and other documents. The majority of the panel consisting of the neutral member and the Carrier's representative, however, voted not to allow this later submitted evidence, and voted to dismiss all five of the appeals for lack of jurisdiction.

In the five nearly identical decisions, the Board concluded that without evidence in the on-property record that the conference had occurred, it had no jurisdiction to consider the Organization's claims. (R. at 1, Ex. A, Award Nos., 26089, 26090, 26092, 26093, 26094, all at p.3) (App. at 16, 24, 37, 45, 53). The Board further concluded that it could not consider evidence not contained

in the on-property record. *Id.* (App. at 17, 25, 38, 46, 54). The Organization's representative filed a dissent in each of the five awards.

The Organization sought review in the district court of all five of these identically reasoned awards pursuant to 45 U.S.C.A. § 153 First (q). In appealing to the district court to dismiss the complaint for failure to state a claim, the Carrier argued as a preliminary matter, that the NRAB's decisions were evidentiary rulings, which could not be set aside absent misconduct or bad faith by the arbitrator. It then sought to convince the district court that the conference is a mandatory precursor to arbitration, and that without written evidence of the conference—evidence that could not be added to the record later—the Board had no jurisdiction to hear the claim. The Organization countered that neither federal law nor the CBA required conferencing and that even if conferencing were required, no rule dictates that conferencing must be proved by evidence in the on-property record. Consequently, the Organization argued, the Board failed to conform to its jurisdiction and violated due process.

The district court concluded that conferencing is indeed required before parties can refer their disputes to the NRAB and that the NRAB did not violate due process by refusing to consider evidence of conferencing outside of the on-property record. Consequently, the district court dismissed the Organization's suit pursuant to Fed. R. Civ. P. 12(b)(6), concluding that the Organization had failed to state a claim upon which relief could be granted. On appeal, the Organization has not challenged the district court's holding that the RLA requires conferencing, but instead focuses on whether the NRAB denied due process and failed to act within the scope of its jurisdiction by requiring proof of conferencing in the on-property record.

**II.**

Although presented through both a statutory and constitutional framework, the essence of the conflict boils down to a single question: is written documentation of the conference in the on-property record a necessary prerequisite to arbitration before the NRAB? The district court answered this question affirmatively, and we review the district court's dismissal *de novo*, looking to see whether relief is possible under any set of facts consistent with the allegations set forth in the complaint. *Pokuta v. Trans World Airlines*, 191 F.3d 834, 839 (7th Cir. 1999). In keeping with the purpose of the RLA—that is, to resolve railway labor disputes in an efficient manor—the jurisdiction of the federal courts is limited to only the narrowest review of NRAB arbitrators' decisions. *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978); *Pokuta*, 191 F.3d at 839. Under the RLA, federal courts may review a Board's decision only when (1) the Board has failed to comply with the requirements of the RLA; (2) the Board has failed to conform or confine itself to matters within the scope of its jurisdiction; and (3) the Board or one of its members has engaged in fraud or corruption. 45 U.S.C. § 153 First (q); *see also*, *Sheehan*, 439 U.S. at 93; *Pokuta*, 191 F.3d at 839. This circuit will also review claims of due process violations by the Board. *See, e.g., Pokuta*, 191 F.3d at 839, *Bates v. Baltimore & Ohio R.R.*, 9 F.3d 29, 31 (7th Cir. 1993); *Morin v. Consol. Rail Corp.*, 810 F.2d 720, 722 (7th Cir. 1987).

In this appeal, the labor Organization makes two claims, first, that the Board violated its due process rights and second, that it violated the RLA by failing to conform or confine itself to matters within the scope of its jurisdiction, as prohibited by 45 U.S.C. § 153 First (q). The Carrier

urges this court to consider the statutory claim before the constitutional one. We agree that it is a "fundamental rule of judicial restraint" that we ought not pass on questions of constitutionality "unless such adjudication is unavoidable." *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 14 (1993) (Blackmun, dissenting). In this case, however, once we answer the key question at issue in this case, adjudication of the due process claim is unavoidable. That question is whether the NRAB created a new requirement when it held that arbitration could not proceed because the Organization had failed to present evidence of conferencing in the on-property record. If it did so, it ran afoul of the due process clause.

Answering this key question will also resolve the Carrier's threshold argument that this case is governed by the review standard of *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987). The Railroad Carrier characterizes the Board's award as a decision to admit or exclude evidence. Such decisions, absent bad faith or error, are left entirely to the discretion of the arbitrator. *Id.* at 40. Again, however, the application of this standard depends on the characterization of the Board's actions. If indeed the Board merely precluded the Organization from submitting evidence under its interpretation of an already existing rule, then we cannot overturn that finding unless we can show that the arbitrator acted in bad faith or that the error was so gross as to amount to affirmative misconduct. *Id.* at 40. If, however, the Board created a new rule which precluded the Organization from submitting evidence, then we are no longer evaluating a decision merely to admit or deny evidence. Once again, it becomes clear that resolution of all of the issues in this case depends on whether the Board created a new rule—a question to which we will turn shortly.

The Carrier's initial approach in the due process arena is to cast doubt on the law of this circuit that allows judicial review of Board orders where a party asserts a due process violation. This argument is based on scholarly theories that the only due process protections required are those already provided in the RLA itself. *See, e.g.*, Buck S. Beltzer & Stephen A. Wichern, *Judicial Review Under the Railway Labor Act: Are Due Process Claims Permissible?* 33 Transp. L.J. 197, 220-224 (2005); Christopher L. Sagers, Note, *Due Process Review Under the Railway Labor Act*, 94 Mich. L. Rev. 466, 469 (1995). The Supreme Court, however, has stated that unless it can be shown by clear and convincing evidence that Congress intended to foreclose judicial review, we must presume that courts may review constitutional questions. *Califano v. Sanders*, 430 U.S. 99, 109 (1977). Nothing in section 153 First (q) of the RLA manifests clear and convincing evidence that Congress intended to foreclose judicial review of constitutional claims under the Act. *See Edelman v. W. Airlines*, 892 F.2d 839, 847 (9th Cir. 1989). This circuit has pointed out that the decisions of the NRAB, "are acts of government, and must not deprive anyone of life, liberty, or property without due process of law." *Elmore v. Chicago & Ill. Midland Ry.*, 782 F.2d 94, 96 (7th Cir. 1986). Consistent with that position, we have continuously held that we will review due process claims arising from NRAB arbitration. *See Pokuta*, 191 F.3d at 839; *Bates*, 9 F.3d at 31; *Morin*, 810 F.2d at 722; *Steffens v. Bhd. of Ry. Airline and S.S. Clerks*, 797 F.2d 442, 448 & n.5 (7th Cir. 1986). We have continually and consistently maintained this position despite a 1979 Supreme Court decision that created confusion in some circuits as to the validity of due process review of NRAB decisions. *See Sheehan*, 439 U.S. at 93-94. Despite the confusion, several circuit courts, including this one, have concluded that the

*Sheehan* decision does not prohibit due process review of NRAB decisions. *See Steffans*, 797 F.2d at 448 & 449 n.5. *See also Shafii v. PLC British Airways*, 22 F.3d 59, 63-64 (2d Cir. 1994); *Hayes v. W. Weighing & Inspection Bureau*, 838 F.2d 1434, 1436 (5th Cir. 1988); *Armstrong Lodge No. 762 v. Union Pac. R.R.*, 783 F.2d 131, 135 (8th Cir. 1986); *Radin v. United States*, 699 F.2d 681, 684 (4th Cir. 1983). We decline to depart from our prior holdings on this issue.

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). That means, of course, that a tribunal may not alter, without warning, the rules for access to it. It is true that the requirements of due process are "relaxed when the tribunal is an arbitral tribunal rather than a court." *United Transp. Union,* 284 F.3d at 712. "In the arbitration context, due process is satisfied so long as the arbitrator provided a fundamentally fair hearing, one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *Int'l Bhd. Elec. Workers v. CSX Transp. Inc.*, 446 F.3d 714, 720 (7th Cir. 2006). It is these minimal requirements, however, that the Organization claims that the NRAB failed to provide by creating and imposing a new rule, unknown to the Organization, that denied it access to a hearing on the substance of the dispute.

This court has considered the predicament created by newly implemented NRAB rules once before in *Chicago Rock Island and Pac. R.R. v. Wells*, 498 F.2d 913 (7th Cir. 1974). In *Wells*, the railroad drafted a written request for an automatic extension of time to file its reply to Wells' claim of wrongful discharge. The letter bore a January 29 postage meter date, but a January 30 postmark. *Wells*, 498

F.2d at 917. The Board refused the railroad's request, declaring that the January postmark was one day too late. *Id.* At the time of the denial, the Board had no rule adopting a United States Postal Service postmark as the criterion for determining timeliness. *Id.* We held that the adoption of a new rule or policy without notice violated due process. *Id.* at 918. The court noted that the procedural defect of adopting a new rule that the United States postmark determined the timeliness of the request for an extension of time was one of "constitutional dimension." *Id.*

It is true that the railroad in *Wells* was denied an opportunity to make any presentation whatsoever to the Board, and in this case the Organization was permitted to argue its position regarding whether the absence of evidence of conferencing mandated dismissal. In this case, however, imposition of a new procedural rule without adequate notice to the parties denied those parties first, and most importantly, the opportunity to comply with the rule, and ultimately, a fair opportunity to be heard. Had the Board permitted the Organization to submit evidence of the conference for its consideration once the issue had been raised, the Organization then could have proceeded to argue that Engineers Glueck, South, Whatley, Fosha and Pope were not deserving of the discharge or discipline they received. Instead, the Board allowed the Carrier to raise the conferencing issue at a late date, but refused to consider any evidence that the procedural pre-requisite had been met. In this way, the facts and conclusion of *Wells* bear most heavily on this case.

The Carrier downplays *Wells* as a pre-*Sheehan* case, but nothing in *Sheehan* alters our due process analysis. Indeed, as we noted above, this court has issued many decisions

since *Sheehan* noting our ability to review claim of due process violations in NRAB proceedings. *See, e.g.*, *Pokuta*, 191 F.3d at 839; *Bates,* 9 F.3d at 31; *Morin*, 810 F.2d at 722; *Steffens*, 797 F.2d at 448 & n.5. We can conclude from *Wells* that if the Board created a new rule previously unknown and unapplied, this would constitute a violation of due process that prevented the substance of the Organization's claim from being heard. This is not only an obvious conclusion from *Wells* and from the mandates of due process, but from the fundamental rule of social interaction we all learned on the kindergarten playground. It is unfair to alter the rules of the game mid-play. We can now turn to the question of whether, in fact, the Board created a new rule.

The crux of the Organization's principal argument in this case is that the district court combined two discreet rules to announce a new rule not articulated in a statute, rule, or the collective bargaining agreement between the parties. The first of these rules is that, before initiating arbitration, the parties must confer after the carrier's highest designated officer has rejected the labor union's appeal. The second of these rules is that parties to arbitration must present all of their evidence to the Board in the on-property record and that new evidence cannot be added on appeal to the Board if it was not presented to the railroad during its on-property review.

The Carrier leads its argument with proof of the first rule—that the RLA and the governing regulations require conferencing. Indeed § 2 Second of the RLA states that "[a]ll disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer,

respectively, by the carrier or carriers and by the employees thereof interested in the dispute." 45 U.S.C. § 152 Second. This same language appears in Circular One—the common name given to the series of rules and regulations that the NRAB adopted in 1934 to govern its internal procedures. 29 C.F.R. § 301.1(b).

Although the Organization argued below that conferencing was not, in fact, required, it is no longer asserting that position on appeal. Consequently, we can assume that parties may not proceed to arbitration until they have held a conference and made a final attempt at resolving their differences. We need not, however belabor this point much. The fact of a conference *vel non* is not in dispute. The Organization adamantly asserts, and Union Pacific does not deny, that the parties met in conference. We can now focus our review on the more narrow question of when and how a party must prove to the NRAB that conferencing has occurred.

Union Pacific's position is that evidence of conferencing must be contained in the on-property record; that is, it must be in writing and it cannot be presented once the on-property record has been closed and presented to the Board. The Organization counters that these requirements have been made from whole cloth and are not contained in the RLA, in Circular One, or in the collective bargaining agreement between the parties. The Organization argues that if the Carrier may raise, for the first time, the question of jurisdiction after the parties have submitted their materials to the Board and the record is closed, then, in fairness, the Organization must be allowed the opportunity to present evidence in response. Or, the Organization argues, the Carrier must not be permitted to raise the question after the on-property record has closed.

As support for its position, the railroad Carrier cites ten arbitration awards in which the Board dismissed cases where there was no evidence of conferencing in the on-property record. *See* Brief of Defendant-Appellee Union Pacific Railroad at pp. 28-29. In the bulk of those awards, however, it was either uncontroverted or clear from the record that the parties had not held a conference on the property prior to submitting the dispute to arbitration. *See* Third Division Award, No. 3203 (R. at 21, Ex. B) (App. at 133) ("It is unrefuted that no conference was held on the property.");[1] Third Division Award, No. 30114 (R. at 21, Ex. B) (App. at 117) ("it is abundantly clear that at no time during the on-property handling of the case was a conference held to attempt to resolve this dispute"); Third Division Award, No. 4931 (R. at 21, Ex. B) (App. at 128) ("The record is clear. A conference at the highest level was not held."); Third Division Award, No. 30260 (R. at 21, Ex. B) (App. at 115) ("It is clear from the record in this case that the instant Claim was not conferenced by the Organization on the property."); Third Division Award, No. 12475 (R. at 21, Ex. B) (App. at 103-04) (noting that the "Carrier submits that no conference was held by the

---

[1] At oral argument the Carrier was asked whether there were any awards among those cited in its brief in which it was undisputed that a conference had not occurred. The Carrier asserted that the Boards' awards do not reveal one way or the other. Oral argument, February 7, 2007, at 11:16-12:02. The Boards awards do reveal that in at least one case it was unrefuted that conferencing had not taken place. In other cases, the Board announced that it was clear that conferences had not occurred. This is a minor point, however, for as we discuss further, *infra*, prior Board awards may be instructive, but hold no precedential value.

parties on the property prior to this appeal" and then finding that "no conference was held prior to its submission to the Board"); Third Division Award, No. 33916 (R. at 21, Ex. B) (App. at 106) ("no conference was ever held on the property"); Third Division Award, No. 27482 (R. at 21, Ex. B) (App. at 126) ("From the record, it appears that Claimant did not further pursue either Claim on the property and did not engage in a conference as required.").

In three of the awards, the Board merely notes that there is no evidence in the record that conferencing occurred at all and thus we cannot definitively determine whether the parties failed to meet in conference or whether they met but neglected to submit evidence of that conference. *See* Third Division Award, No. 18679 (R. at 21, Ex. B) (App. at 97) ("In a review of this record we fail to find any evidence that [a] conference was ever held on the property."); Third Division Award, No. 30821 (R. at 21, Ex. B) (App. at 112) ("Nowhere does the record indicate that a conference was ever held or requested on the property."); Third Division Award, No. 22428 (R. at 21, Ex. B) (App. at 96) ("The record before the Division is devoid of any evidence that [a] conference was held."). Consequently, these prior Board awards do not indicate whether the Board dismissed the cases because conferencing did not occur (a fact which would support the Organization's position) or because the parties did not put written evidence of conferencing in the on-property record (a fact which would support the Carrier's position). The Organization argues that "there is not a single award that says conferences must be proved only by documents that were previously exchanged by the parties and then attached as exhibits to the 'on-property record.'" (Reply Brief at 4). It is true that the Railroad has not cited such an award. The district court too admitted that, "no Board

opinion expressly states that the Board will not con-
sider evidence of conferencing outside of the record."
(R. at 40, p.13). The district court, however, seemed con-
vinced that "Board precedent on conferencing cites the
lack of evidence *in the record* as the basis for its decision."
*Id.* (emphasis in original). We do not read the language
of the awards in quite the same way. True, the Board
dismissed each of these awards for lack of jurisdiction.[2] It
is unclear, however, whether it based its decision on the
lack of evidence in the on-property record, as the district
court concluded, or rather because it was clear that
conferencing, the procedural prerequisite to arbitration,
had not occurred. In short, the awards make clear that
the parties must conference. But these prior awards are
no more illuminating than the RLA in articulating how
a party must prove that a conference occurred.

Moreover, although study of prior arbitration awards is
useful, the awards are not conclusive. Arbitrators can
and do consider the language of other awards in deter-
mining the outcome of matters before them, but they are
not bound by the outcome of prior decisions in the same
way that judges are bound by the doctrine of *stare decisis*
in courts. *See* Ray J. Schoonhoven, *Fairweather's Practice
and Procedure in Labor Arbitration,* 521-525 (4th Ed. 1999);
Martin H. Malin & Robert F. Ladenson, *Privatizing Justice:
a Jurisprudential Perspective on Labor and Employment Arbitra-
tion from the Steelworkers Trilogy to Gilmer*, 44 Hastings L.J.
1187, 1197 (1993); Timothy J. Heinsz, *Grieve it Again: of Stare*

---

[2] The Board did not always use the "lack of jurisdiction"
language in the awards cited *supra*. Sometimes it merely stated
that it had no authority to hear the case or that it had to be
dismissed because of a procedural flaw.

*Decisis, Res Judicata and Collateral Estoppel in Labor Arbitration*, 38 B.C. L. Rev. 275, 277 (1997); Carlton Snow, *An Arbitrator's Use of Precedent*, 94 Dick. L. Rev. 665, 672-74 (1990). There are myriad reasons for the non-precedential nature of prior awards. The Organization touched on some of them in its reply brief by pointing out that awards are not codified, not wholly accessible to non-parties, and contain sketchy accounts of the record. Moreover, issues that confront labor arbitrators are often quite fact specific and involve evaluating not only the action leading to the discipline or discharge but also the fairness of the rules established and applied by the employer and the relationships between the parties. *See* Heinsz, 38 B.C. L. Rev. at 294-95. In any event, the awards only tell us what we already knew—first, that parties must conference, and second, that they must demonstrate to the Board that they have conferenced. What they do not tell us is how or when a labor organization must prove that a conference occurred. Could it not, for example, arrive at the NRAB hearing with an audio recording of the conference?

Our exploration of prior awards has diverted us from a more relevant path—the statutes and regulations of the RLA. The Carrier asserts that Section 2 Second is the key statutory provision governing conferencing. *See* 45 U.S.C. § 152 Second. As we noted, however, this section instructs that the parties must conference but offers no guidance as to how proof of conferencing must be presented to the Board. According to 29 C.F.R. § 301.5(d), employees must submit to the Board a document which "clearly and briefly set[s] forth all relevant, argumentative facts, including all documentary evidence submitted in exhibit form, quoting the agreement or rules involved, if any; and all data submitted in support of

employees' position must affirmatively show the same to have been presented to the carrier and made a part of the particular question in dispute." In other words, an employee must submit to the Board everything that the employee used to attempt to convince the railroad not to discipline or discharge her. Of course the employee never used the fact of conferencing "in the support of [her] position," and it was never part of "the particular question in dispute," and therefore it would not appear to be required by 29 C.F.R. § 301.5. The Organization advises that there may not be documentary evidence of conferencing at all. In fact, the collective bargaining agreement between the parties in this case dictates that the parties may hold pre-hearing conferences by telephone. Consequently, evidence of the conference might appear as a note in a calendar scheduling a face to face conference. It may be in the form of a telephone bill from the carrier's conference officer to the union. Neither of these forms of evidence were "presented to the carrier" or were used as evidence "in support of" the employees' position. Section 301.5 of the regulations, therefore, likewise fails to provide any rule that evidence of the conference must be presented in the on-property record.

Thus far our examination of prior awards, 45 U.S.C. § 153 First (q), and 29 C.F.R. § 301.5 has failed to uncover a rule that evidence of the conference must be contained in the on-property record. Is there a rule that would bar a labor organization from doing just what the Organization did here—presenting evidence of the conference after the on-property record has closed and been submitted to the Board? The Carrier argues there is.

The Carrier reasons, and the district court agreed, that the Organization is barred from submitting this later

filed evidence of conferencing by the NRAB's precedential rule that it cannot consider "new evidence" not contained in the on-property record. The NRAB functions in an appellate-like manner and so the rule against accepting new evidence follows logically. First, it fulfills the goal of the RLA to encourage prompt resolution between the parties without resort to costly, repetitive, and antagonistic processes. In order to give the employer a full and complete stab at resolving the issue on its own, the labor union must present all of its evidence on the merits to the employer's decision maker (usually an investigating officer or superintendent of the carrier) before turning to arbitration. Second, the NRAB is reviewing the actions of the carrier. In other words, the Board must assess the following: based on what the carrier knew and saw, was the carrier's discipline fair? For this reason the Board cannot evaluate new evidence. The same reasoning does not hold true for evidence of conferencing, however. The conference is the last ditch effort to resolve the dispute on the property without the help of outsiders, and it occurs after the on-property hearing before the carrier's Superintendent or investigating officer. The fact of conferencing was not one of the factors that the carrier's disciplinarian considered in making its decision.

In fact, of all the arbitration awards that Union Pacific cites for the proposition that the Board cannot review new evidence, in each case the new evidence that the party sought to admit was evidence relating to the merits of the dispute. For example, the Board presents Award No. 25994 as support for the proposition that the Board

cannot consider new evidence.[3] In that case, the Organization claimed that the Carrier had not reviewed a transcript of the investigation prior to imposing discipline and therefore had not provided the employee with a fair and impartial investigation as required by the collective bargaining agreement. (R. at 21, Ex. B) (App. at 63). The Organization further contended that the Carrier omitted the date on the transcript to obfuscate the fact that the Carrier's decision maker had not considered the record of investigation. The Board concluded that, despite the fact that a date on the transcript would have provided "a straightforward means of ascertaining whether the Superintendent had the transcript before rendering his decision," the Carrier did not supply that information to the Board, and thus it was entitled to infer that the withheld evidence would not have been favorable to the Carrier. *Id.* at 65.

The Carrier describes this award as enforcement of a "hyper-technical" rule about dating a transcript. The date on the investigative transcript, however, was more than a simple formality or rule; the date of the transcript turned out to be the key to the substantive question in the case—that is, did the Carrier review the transcript before imposing discipline? If the Carrier had submitted new evidence regarding the date to the Board, evidence that was not presented below, the Organization would have been at a distinct disadvantage. It could not have gone back to do its own investigation and present evidence to try to refute the proposed date of the investigation tran-

---

[3] The parties in that arbitration were the same parties involved in this litigation.

script. As the dissenting arbitrator in the NRAB awards at issue in this case pointed out, "new evidence is disallowed by the Board when it represents an attempt to blind side one party or another." (R. at 1, Ex. A) (App. at 20). In this case, in contrast, there was no question that the parties had met in conference and therefore the presentation of new evidence in no way prejudiced the Carrier. To the contrary, any blindsiding came from the Carrier's actions. When the Organization filed its Notice of Intent to proceed to arbitration, it forwarded a copy of the on-property record to the NRAB, and, of course, to the Carrier. It was clear from the face of the documents that the on-property record lacked any written evidence that a conference had occurred. The Carrier, however, did not object to the lack of evidence of conferencing. Instead, it responded substantively to the merits of the claims and the parties proceeded to arbitration. Only on the eve of arbitration—when the Carrier claims the record was closed to all new submissions—did it raise its objection to the lack of evidence.

The regulations require each party to submit all supporting evidence in its original submission to the Board. 29 C.F.R. § 301.5(d), (e). If these regulations require the Organization to submit "everything" in the original submission to the Board, then it must also be true that the Carrier was required to present "everything" in its original submission to the Board—including its claim that there was no evidence of conferencing. *See also* 29 C.F.R. § 301.7(b) ("the parties are, however, charged with the duty and responsibility of including in their original written submission all known relevant, argumentative facts and documentary evidence."). Fundamental fairness requires either that the Carrier be required to raise its objection when the labor union can still respond and

present evidence of conferencing or, if it bars the labor union from presenting new evidence, then it must also bar the Carrier from raising the argument after the original submission has been filed.

Before we conclude, it is worth emphasizing that our review of NRAB awards remains exceptionally narrow. This circuit respects the finality of NRAB awards and the independence of carriers and employees to create contracts governing resolution of their disputes. As we have said before, the question before a federal court "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir. 1987). An arbitration award made by the Board may be overturned "only if the reviewing court is convinced that [the arbitrator] was not trying to interpret the collective bargaining contract, but that instead he resolved the parties' disputes according to his private notions of justice." *Bhd. of Locomotive Eng'ring v. Atchison, Topeka and Sante Fe R.R.*, 768 F.2d 914, 922 (7th Cir. 1985). When a Board creates a new requirement on its own, it is not interpreting a CBA or following the dictates of the RLA or its regulations. Our prior precedent in *Wells* instructs that such changes in the rules violate the due process rights of the parties. This case presented a unique situation which we doubt will come before a court again: that is where the parties actually did meet in conference, but the labor organization failed to present such evidence to the Board in its initial submission, where the carrier likewise failed to object to the lack of evidence in its initial submission to the Board, and

where the labor organization could and did present evidence of conferencing prior to a hearing on the underlying dispute. Because no statute, regulation, or CBA required the evidence to be presented in the on-property record, because the Carrier could not have been prejudiced by the tardy submission of evidence, and because the Organization was prejudiced by the late objection, we find that the Board's decision to dismiss violated the due process rights of the Organization. The district court issued a thoughtful decision, but for the reasons articulated above, it must be REVERSED.