In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1897

BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN,

*Plaintiff-Appellant*,

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:16-cv-07233 — **John Robert Blakey**, *Judge*.

ARGUED MARCH 28, 2018 — DECIDED SEPTEMBER 25, 2018

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Union Pacific Railroad Company hired Richard Griff in the mid-1980s. Griff was promoted from locomotive engineer to management over the next several years, only to be fired in 2013 when the railroad discovered that he had falsified safety and training documentation. Griff objected to his termination on procedural grounds, arguing that he was entitled to a hearing under a

collective-bargaining agreement between Union Pacific and his union, the Brotherhood of Locomotive Engineers and Trainmen. The railroad responded that the agreement did not provide a hearing for supervisory employees like Griff.

The Brotherhood submitted Griff's grievance to the National Railroad Adjustment Board, *see* 45 U.S.C. § 153 First (i), and the Board denied the claim. It explained that it had already resolved similar disputes between the parties and that nothing in the specific collective-bargaining agreement required a different outcome. Like Union Pacific, the Board concluded that Griff was not entitled to a pretermination hearing because he was a supervisory employee.

Undeterred, the Brotherhood appealed the Board's decision to the federal district court. *See id.* § 153 First (q). Challenging an arbitral award of the Adjustment Board is famously difficult. The Railway Labor Act states that

> the findings and order of the division shall be conclusive on the parties, except … for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

*Id.* The Brotherhood alleged several statutory and jurisdictional defects, in addition to a due-process claim under the Fifth Amendment to the U.S. Constitution. The judge denied the claims and entered summary judgment for Union Pacific.

The Brotherhood now appeals, and Union Pacific has moved for sanctions under Rule 38 of the Federal Rules of

Appellate Procedure. We affirm and grant the motion for sanctions. The Brotherhood's arguments are facially untenable and fly in the face of clear precedent. The Board had authority to decide this dispute and properly did so.

## I. Background

Union Pacific hired Griff as an operating-craft employee in 1984. Eventually Griff became a locomotive engineer, and as such, his employment was governed by a collective-bargaining agreement between the railroad and his union, the Brotherhood of Locomotive Engineers and Trainmen.

This appeal involves two of the agreement's provisions. The discipline rule states that "[l]ocomotive engineers will not be disciplined without first being given a fair and impartial investigation." The rule prescribes a predeprivation hearing with several guarantees: notice of the charges, a right to representation, an opportunity to cross-examine witnesses, and a written decision by the railroad. Next, Article 9 allows engineers that are promoted to supervisory positions to accumulate "seniority" if they continue to pay dues to the union. As holders of seniority rights, the newly minted supervisors retain the option to leave their managerial posts and return to work as engineers.

Union Pacific promoted Griff to Manager of Operating Practices in December 2005, followed by a second promotion to Manager of Road Operations in September 2011. Griff elected to accrue seniority as an engineer and accordingly continued to pay dues to the Brotherhood. Union Pacific then fired Griff in February 2013 after discovering that he had "falsified safety and training-related documentation [to] substantiat[e] his evaluations of subordinate employees."

The parties agree that Union Pacific was permitted to fire Griff from his supervisory role at will and without a disciplinary hearing because managerial posts are not covered by the collective-bargaining agreement. By its own terms, the discipline rule applies only to "locomotive engineers."

The crux of this case centers on what happened next. Along with the termination notice, Union Pacific informed Griff that he could not exercise his seniority rights and return to his job as an engineer. Griff objected and argued that Article 9 operates posttermination, meaning he could return as an engineer whenever he wished. Then having made that election, Griff claimed that the discipline rule guaranteed a hearing before Union Pacific could fire him outright. The railroad disagreed; it insisted that Article 9 allows promoted engineers to return to their prior jobs only if they exercise their seniority *before* being fired from a supervisory position. Otherwise termination eliminates seniority rights along with the managerial post. Accordingly, Union Pacific concluded that Griff was not entitled to a hearing because once fired from management, he no longer had rights as an engineer.

The Brotherhood petitioned the First Division of the National Railroad Adjustment Board to decide the case by binding arbitration. *See* § 153 First (i). The union's only argument was that Article 9 entitled Griff to a pretermination hearing. The Board disagreed and adopted Union Pacific's interpretation. It explained that the parties had litigated this issue several times before with the same result: A managerial employee cannot exercise seniority rights posttermination because once "[t]he employee relationship [is] … irrevocably ended for cause, there is no longer any

valid basis upon which the employee's seniority can operate." The Board then explained that this remained true under Article 9 because the provision "makes absolutely no reference to a promoted employee being able to exercise seniority in the face of termination from a management position for cause." In sum, the Board concluded that Griff was not entitled to a hearing because Article 9 did not change the default rule—termination eliminates any seniority rights that supervisors enjoyed as engineers.

The Brotherhood strongly objected to this line of reasoning because it allows unscrupulous employers to promote and then immediately fire engineers in order to skirt the discipline rule. The Board appreciated the concern and interpreted the collective-bargaining agreement to protect against this risk. Recognizing that termination *for cause* had always been part of the rationale for denying seniority rights to fired managers, the Board concluded that railroads "cannot fire a management employee with Article 9 rights without articulating a good faith basis as to why it has cause to do so." The Board found that Union Pacific met the good-faith standard in Griff's case because the railroad said it fired him due to his dishonest conduct. Then the Board denied Griff's claim and declined an award in his favor.

Battered but not beaten, the Brotherhood took Griff's case to federal court. The union set itself up for a tough fight—federal courts lack jurisdiction to question the Board's interpretation of a collective-bargaining agreement. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987). A court may set aside an arbitral award only for: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to

conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) (citing § 153 First (q)). This circuit has also held that plaintiffs can challenge an arbitral award under the due-process clause of the Fifth Amendment to the U.S. Constitution. *See, e.g., Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R.R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008).

In the district court, the Brotherhood raised several jurisdictional defects, a due-process claim, and a handful of Railway Act violations. The judge rejected them all and entered summary judgment for the railroad. The Brotherhood now renews several of its challenges on appeal, and Union Pacific has moved for sanctions under Rule 38 of the Federal Rules of Appellate Procedure.

## II. Discussion

Our review of a summary judgment is de novo. *Knopick v. Jayco, Inc.*, 895 F.3d 525, 528 (7th Cir. 2018). We discuss each of the Brotherhood's challenges to the arbitral award and then turn to Union Pacific's motion for sanctions.

## A. Jurisdiction

There is no basis to question the Board's authority to decide this case. The First Division has "jurisdiction over disputes involving train- and yard-service employees of carriers; that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees." 45 U.S.C. § 153 First (h). That's precisely the kind of case the parties presented. The Brotherhood argued that Griff was an engineer owed a hearing before Union Pacific could fire him outright. The railroad responded that

Griff had no rights as an engineer—in effect, that he was not an engineer at all—and accordingly had no right to a hearing. Thus the dispute lay at the heart of the Board's jurisdiction: whether a putative engineer had certain guarantees under a collective-bargaining agreement with a railroad.

The Brotherhood's arguments to the contrary border on absurd. Its principal claim is that the Board lacked authority to conclude that Griff was *not* an engineer because its jurisdiction extends only to "disputes involving … *engineers*." *Id.* (emphasis added). In other words, the Board supposedly had the power to declare Griff the winner but not the loser.

This fantastical vision of jurisdiction is obviously incorrect; we don't play a game of Heads I win, Tails you lose. Adjudicators determine whether the allegations sustain an exercise of jurisdiction at the outset of the case. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). Then they declare the parties' rights and order remedies as the law requires. For example, a lawsuit under the federal diversity jurisdiction requires an amount in controversy greater than $75,000, but the court does not lose jurisdiction when it adjudicates the claim and concludes that the plaintiff is entitled to nothing or less than that amount. *See* 28 U.S.C. § 1332(a). The same principle applies here. Griff claimed to be an engineer under the collective-bargaining agreement and thereby triggered the Board's jurisdiction. While the Board read the agreement differently, the result is that Griff loses the case, not that the Board loses authority to decide it.

Our caselaw has uniformly taken this approach. Time and again we have held that "[a]rbitral boards established pursuant to the Railway Labor Act have exclusive jurisdic-

tion to resolve disputes over the *application* of collective bargaining agreements in the railroad and airline industries." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 314 (7th Cir. 2002) (emphasis added); *see also Sheehan*, 439 U.S. at 94 (noting the Board's exclusive jurisdiction over "disputes arising out of the interpretation of collective-bargaining agreements"). That's essentially what this case is about: The Brotherhood claims Griff is protected by the agreement because he's an engineer, and Union Pacific argues that he isn't. The legal question thus centers on whether or not a term in a collective-bargaining agreement applies to a particular claimant. The Board plainly has jurisdiction to decide that question in either direction.

The Brotherhood proposes another jurisdictional defect. It argues that the Board had no authority to impose the good-faith requirement because the rule governs how railroads manage supervisory employees beyond the scope of its jurisdiction. From the outset we are puzzled by the goal of this claim. The Brotherhood appears to contend that the Board had no authority to protect Griff from baseless termination. So even if we found this specific jurisdictional infirmity, it would redound only to Griff's detriment. Union Pacific would be free to fire managers for any or no reason.

Nonetheless, on the merits this claim has nothing to it. The Board concluded that Article 9 required Union Pacific to articulate a good-faith basis before terminating supervisory employees with seniority rights. Therefore the Board's decision applied a collective-bargaining agreement to confer rights on a disputed beneficiary. That lies squarely within the Board's jurisdiction for the reasons we've already discussed. Moreover, it's also the kind of dispute the Brother-

hood *wants* the Board to resolve. Again, the Brotherhood argues that Article 9 entitles Griff to a full pretermination hearing. If the Board has jurisdiction to say that, it also has jurisdiction to conclude that Griff is entitled to less.

Finally, the Brotherhood argues that the Board exceeded its jurisdiction because it failed to "interpret the collective bargaining contract" and instead "resolved the parties' disputes according to … private notions of justice." *Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 922 (7th Cir. 1985). This contention is self-evidently mistaken. In its decision the Board noted that it had already interpreted similar contract language and concluded that managers could not exercise their seniority rights after they'd been fired. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (permitting arbitrators to rely on "the practices of the industry" when interpreting a collective-bargaining agreement). Then it discussed why this remained true under Article 9. The Board explained that the provision "makes absolutely no reference to a promoted employee being able to exercise seniority in the face of termination from a management position for cause." This is an unequivocal interpretation of the agreement, and as such we are bound by it. Any argument otherwise flatly ignores what the Board did in this case.

## B. Due Process

"[T]he requirements of due process are relaxed when the tribunal is an arbitral tribunal rather than a court." *Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 751 (internal quotation marks omitted). The arbitrator must provide "adequate notice, a hearing on the evidence and an impartial decision." *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*,

446 F.3d 714, 720 (7th Cir. 2006). The Brotherhood challenges only the second of these requirements. It contends that the Board had no evidence from which to conclude that Union Pacific's stated reason for firing Griff was offered in good faith.

This argument is wrong on the facts and inconceivable otherwise. Union Pacific explained to Griff why it fired him in early April 2013, and it did so again in its filings before the Board. The Brotherhood repeatedly declined to challenge the basis for Griff's termination and instead presented a pure question of contract interpretation. As a result there was plenty of evidence to justify the Board's conclusion: Union Pacific presented a reason for firing Griff, and the Brotherhood did not dispute it. Now several years later the Brotherhood cannot manufacture a due-process problem by contesting anew a factual issue it already laid to rest.

Reaching a different conclusion would also endorse an inconceivable state of affairs. The crux of the Brotherhood's claim is that the Board should question Union Pacific's candor without any reason to think it has acted in bad faith. That's entirely backward. Adjudicators are entitled to assume that the parties present their positions in good faith and with sufficient support. This is why federal courts have Rule 11 of the Federal Rules of Civil Procedure. By filing their case before the court, the litigants or their counsel promise that they have not brought suit "for any improper purpose." FED. R. CIV. P. 11(b)(1). They also affirm that "the factual contentions have evidentiary support." *Id.* 11(b)(3). Of course there are times when we doubt these representations, but we do so only "after carefully analyzing the legal and factual sufficiency" of the allegations of malfeasance.

*Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988). Here the Brotherhood offered no reason to second-guess Union Pacific's sincerity, so the Board did not have to conduct a hearing on that question.

The Brotherhood next contends that the Board deprived Griff of due process when it "sanctioned" Union Pacific's decision to fire him without a hearing. This position is difficult to parse. On the one hand, the Brotherhood says that the Board inappropriately placed its imprimatur on Union Pacific's denial of due process. That's obviously incorrect because the railroad is a private entity that cannot violate the Fifth Amendment. *See Hill*, 814 F.2d at 1198. On the other hand, the Brotherhood argues that *the Board* effectively terminated Griff when it upheld the railroad's decision. That's also nonsensical. The Board did not adopt or subsume Union Pacific's actions when it concluded that there was no contractual obligation to conduct a pretermination hearing. This is obvious—resolution of a contract dispute does not transform the parties' private terms into a public instrument.

## C. Railway Labor Act

The Railway Labor Act provides that disputes between employees and railroads "shall be handled in the usual manner." § 153 First (i). The Brotherhood argues that the Board violated this provision when it articulated the good-faith standard but then failed to remand the case to Union Pacific for an evidentiary hearing.

This claim is fundamentally flawed because the "usual manner" requirement does not apply to the Board. Our cases

already hold as much, and the text of the statute is perfectly clear. *See, e.g.*, *Ryan v. Union Pac. R.R. Co.*, 286 F.3d 456, 458–59 (7th Cir. 2002). Disputes are supposed to be resolved "in the usual manner up to and including the chief operating officer *of the carrier* designated to handle such disputes." § 153 First (i) (emphasis added). The reference to the "carrier" demonstrates that the "usual manner" refers to the railroad's dispute-resolution process. Additionally, the parties are permitted to "petition … the Adjustment Board" only after "failing to reach an adjustment *in this manner*." *Id.* (emphasis added). Thus the statute again distinguishes between the "manner" employed by the parties and the Board's arbitral process. It goes without saying that the Board cannot violate a provision that doesn't govern it.

The Brotherhood's argument would also fail even if we overlooked this key statutory feature. We have held that "the 'usual manner' provision allows the railroad and the union to prescribe *in the collective bargaining agreement* the manner in which grievance proceedings shall be conducted on the property." *Ryan*, 286 F.3d at 459. Here the Board explicitly concluded that the collective-bargaining agreement did not entitle Griff to a hearing on the good-faith question. It held that "having 'cause' to terminate the employee … *does not mean* that the terminated management employee is entitled to a formal [i]nvestigation." (Emphasis added.) That the Brotherhood seeks to relitigate this point on appeal betrays ignorance either of the Board's decision or of the governing law. Again, the Board's interpretation of the contract is conclusive even if we think it wrong or unpersuasive.

### D. Rule 38 Sanctions

Rule 38 of the Federal Rules of Appellate Procedure authorizes us to sanction an appellant for filing a frivolous appeal. An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017) (quotation marks omitted). Litigants cannot "rehash[] positions that the district court properly rejected" or "present[] arguments that are lacking in substance and foreordained to lose." *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations and quotation marks omitted).

These standards describe this appeal. The Brotherhood's jurisdictional arguments betrayed fundamental principles of adjudicatory authority. It is obvious that a litigant cannot bootstrap an arbitrator's jurisdiction into guaranteed victory. The due-process and Railway Act claims were also hopelessly flawed; both are foreclosed by our caselaw and plain text. Finally, we are troubled by the Brotherhood's blatant and repeated disregard of the Adjustment Board's decision. The Board already decided that Griff was not entitled to a hearing under the collective-bargaining agreement, yet the Brotherhood chose to contest the merits of that decision under the guise of a Railway Act claim. Similarly, the Board's opinion was self-evidently based on its interpretation of the agreement, but the Brotherhood repeatedly urged us to overlook this undeniable fact. We do not allow the parties to bury their heads in the sand. Ignorance is sanctionable, not bliss.

Nonetheless, the Brotherhood asks us to withhold sanctions because this appeal is an aberration. The union assures us it's a responsible litigant and rarely challenges arbitral

awards and therefore doesn't need to be deterred from making unmeritorious appeals in the future. That may be right, but it misses a key point. Regardless of what the Brotherhood might do down the road, Union Pacific should not have been required to litigate *this* appeal. Rule 38 sanctions are designed to compensate the appellee for the time and resources wasted in defending against a plainly baseless appeal. *See Harris N.A. v. Hershey*, 711 F.3d 794, 801 (7th Cir. 2013). A promise "not to do it again" does not excuse the harm already inflicted.

In sum, when federal jurisdiction is limited to narrow grounds, when the arguments on those grounds are implausible, and when the appellant spends much of his time attempting to circumvent those grounds, sanctions are appropriate. We therefore grant Union Pacific's motion for Rule 38 sanctions. Union Pacific shall provide an accounting of its costs and attorneys' fees within 15 days.

AFFIRMED WITH SANCTIONS.