In the

# United States Court of Appeals
## for the Seventh Circuit

No. 22-2541

TIMOTHY UPCHURCH,

*Plaintiff-Appellant,*

*v.*

TIMOTHY M. O'BRIEN, MARGARET M. O'BRIEN,
and STEVEN M. LUCARELI,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 19-cv-165-wmc — **William M. Conley**, *Judge.*

SUBMITTED MARCH 29, 2023 — DECIDED AUGUST 6, 2024

Before SYKES, *Chief Judge*, and ROVNER and BRENNAN, *Circuit Judges*.

SYKES, *Chief Judge*. For years Timothy Upchurch waged a relentless and disturbing campaign of harassment against his neighbors, Timothy and Margaret O'Brien, in a dispute over a claimed easement across their property for access to the shores of Catfish Lake. The local sheriff's office eventually stepped in, and Upchurch was convicted of disorderly

conduct, criminal damage to property, and theft stemming from his trespass on the O'Briens' property and theft of their security camera. Upchurch retaliated with this suit against the O'Briens, their lawyer, the local district attorney, and three sheriff's deputies seeking damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for alleged interference with his claimed easement.

The suit was utterly frivolous from its inception. Upchurch does not own an easement over the O'Briens' property, and the RICO claim was baseless and vindictive, filed only for the purpose of harassment. After about a year of litigation and facing sanctions motions under Rules 11 and 37 of the Federal Rules of Civil Procedure, Upchurch dropped the case. The district judge awarded sanctions and ordered Upchurch and his attorney, Timothy Provis, to pay the defendants' costs and attorney's fees.

Upchurch appealed, claiming that the judge was required to hold a hearing before imposing sanctions. The appeal is untimely; we dismiss it for lack of jurisdiction. The appeal is also thoroughly frivolous, so we grant the defendants' motion for sanctions under Rule 38 of the Federal Rules of Appellate Procedure.

## I. Background

For more than 30 years, Timothy O'Brien and his wife, Margaret, owned Everett Resort on Catfish Lake in Eagle River, Wisconsin. For many years Timothy Upchurch, who lived in a neighboring cottage, insisted that he had an easement in his deed that guaranteed access to the lake over the resort property. The O'Briens disputed his claim; they installed "No Trespassing" signs, surveillance cameras, and

other security measures to deter him from trespassing on their property.

Upchurch responded to these measures with a persistent and troubling campaign of harassment against the O'Briens. Starting in 2003, he sent hostile and expletive-laden notes and letters to the O'Briens and Steven Lucareli, their lawyer. In 2012, the letters had become more frequent and aggressive, prompting the Vilas County Sheriff's Office to warn Upchurch that his conduct amounted to stalking and that he would be arrested if it continued.

About a year later, a security camera caught Upchurch trespassing on resort property and stealing a second security camera the O'Briens had installed after Upchurch *twice* used a chainsaw to cut down a fence at the resort. The O'Briens reported the trespass and theft to law enforcement, and Upchurch was charged with stealing the security camera. He pleaded no contest and was convicted of theft.

Undeterred, Upchurch was soon arrested for stalking the O'Briens. He was charged with disorderly conduct and criminal damage to property. He again pleaded no contest and was convicted. In 2015 the O'Briens applied for a restraining order against Upchurch. The petition was resolved with an agreement among the parties that Upchurch could not go within 200 yards of the O'Briens or their property.

With this agreement in place, Upchurch focused his attention on Lucareli, the O'Briens' lawyer. In 2017 he filed grievances against the attorney with the Wisconsin Supreme Court's Office of Lawyer Regulation. He asserted that Lucareli was an "absolute menace to our society" and that he,

along with the O'Briens, "should be prosecuted and sent to prison."

In 2018 the O'Briens sold Everett Resort. Upchurch still did not relent. Represented by Attorney Timothy Provis, he filed suit in federal court against the O'Briens, Lucareli, the Vilas County District Attorney, and three Vilas County sheriff's deputies. The complaint alleged that Upchurch had "an easement in his deed" giving him access to Catfish Lake over the Everett Resort property, and that the defendants had engaged in an illegal racketeering enterprise and committed a pattern of racketeering acts—specifically, extortion and obstruction of justice—with the purpose of interfering with his easement, all in violation of RICO, 18 U.S.C. §§ 1962(c), 1964(c). The complaint sought triple damages, punitive damages, attorney's fees, and costs.

The complaint's foundational factual allegation—that Upchurch owned a deed with a lake-access easement over the resort property—was false. Though he lived in a cottage next door, he was not the title holder and owned neither a deed to the property nor an easement for lake access across Everett Resort.

The different groups of defendants filed motions to dismiss, and the O'Briens also moved for sanctions under Rule 11. The latter motion highlighted Upchurch's disturbing campaign of harassment and the complete absence of any good-faith basis in fact or law for the RICO claim.

Provis's response on his client's behalf included only his own declaration conceding that Upchurch did not in fact own a deed or easement, as the suit had claimed. Provis instead asserted that the relevant easement was "in the name of the

Weiland family trust" and that Marvin Weiland—the father of Upchurch's wife—would "sign an affidavit" at "an appropriate time" confirming that Upchurch was entitled to use the easement. As for the sanctions motion, Provis offered mostly non-responsive retorts and concluded with the grandiose assertion that "[t]his case is about a powerful corporation imposing its will on ordinary folks" and that if Provis "had time to waste[,] he would ask for sanctions against the O'Briens."

Discovery proceeded while the dismissal and sanctions motions were pending. When Provis neither served initial disclosures nor responded to defense discovery requests, the O'Briens filed a motion to compel. In an order granting the motion, the district judge noted that Upchurch and his counsel had "no excuse" for failing to comply with discovery obligations. The judge's deadline for complying with his order came and went with no response, so the O'Briens moved for sanctions under Rule 37 in addition to their pending Rule 11 motion.

Less than a week after this second motion for sanctions, Provis filed a notice of voluntary dismissal as to the O'Briens, Lucareli, and the district attorney. Days later he filed a stipulation signed by counsel for the three sheriff's deputies agreeing to dismiss the case against them. Provis then filed a half-page response to the O'Briens' second sanctions motion, asserting that the court lacked jurisdiction to consider sanctions because of the dismissal notices.

At this point Lucareli filed his own motion for sanctions under Rule 11. In a minute order shortly thereafter, the judge acknowledged receipt of the dismissal notice and stipulation of dismissal and noted that these pleadings, taken together, "terminate[d] the whole case." But the judge retained

jurisdiction over the three sanctions motions: the O'Briens' motions under Rules 11 and 37, and Lucareli's motion under Rule 11.[1]

The judge eventually granted all three sanctions motions, emphasizing that the case "should never have seen the light of day." Upchurch's complaint "contained various, obvious factual inaccuracies and was devoid of any reasonable basis in existing law." The judge also found that Upchurch had filed the suit for an improper purpose—namely, to harass the defendants. Finally, the judge held that sanctions under Rule 37 were warranted given the "unrebutted evidence" that Upchurch had failed to comply with the court's discovery order. For all these reasons, the judge concluded that an award of costs and reasonable attorney's fees was appropriate. He invited the O'Briens and Lucareli to follow up with itemized requests documenting their fees and costs. The judge also ordered Provis to disgorge any fees that Upchurch had paid him for his work on the lawsuit and deposit that sum with the court.

The O'Briens and Lucareli promptly complied with the judge's order by submitting itemized requests for attorney's fees and costs. Provis responded by asking the judge not to

---

[1] *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990) (explaining that the "imposition of a Rule 11 sanction," "[l]ike the imposition of costs [and] attorney's fees, … is not a judgment on the merits," so the "determination may be made after the principal suit has been terminated"); *Dunn v. Gull*, 990 F.2d 348, 350 (7th Cir. 1993) (determining that a district court "maintained jurisdiction over the sanctions motion"—which had sought sanctions under Rule 11 and Rule 37—even though the court had previously granted a dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure).

require disgorgement of the $10,000 retainer that Upchurch had paid him. He disclosed that Upchurch had sued him in small-claims court to recover payment, and that he and his client were litigating over $4,000 of the retainer that remained unspent. Provis explained that he was taking "responsibility for his mistake" and was "not putting up any defense," so making him disgorge his retainer to the court would prevent Upchurch from getting his money back.

Upchurch then filed his own response. Rather than contest the itemized fee requests, he simply tried to relitigate whether sanctions were warranted in the first place. Provis did the same in another nonresponsive filing; in this document he argued for the first time that sanctions could not be imposed without a hearing.

In an order entered on July 26, 2022, the judge resolved all remaining matters. He awarded the costs and attorney's fees the O'Briens and Lucareli had requested. He declined to rescind his disgorgement order, but he modified it to a limited extent: if Upchurch had already recovered some of his retainer in small-claims court, the disgorgement amount could be reduced commensurately. Finally, he rejected Provis's request for a hearing as unnecessary. On August 4 the O'Briens asked the judge to "enter judgment" based on the July 26 order. The judge did so that same day, restating the same fee awards from the July 26 order. Upchurch filed a notice of appeal on August 31.

## II. Discussion

Our threshold question is appellate jurisdiction. After Upchurch appealed, the O'Briens moved to dismiss the appeal as untimely. We decided to take that motion—and an

accompanying motion for frivolous-appeal sanctions under Rule 38—with the merits of the case. We directed the parties to address jurisdiction in their briefs; we also encouraged the O'Briens and Lucareli to file a joint brief. They obliged.

Provis continues to represent Upchurch on appeal. (We don't know whether or how the dispute over his retainer was resolved.) He did not meaningfully engage with the question of appellate jurisdiction and did not respond at all to the argument about Rule 38 sanctions, either in his opening brief or reply. Instead, he offered a largely incoherent and ultimately frivolous argument about the judge's failure to hold a hearing before imposing sanctions. (More on that later.)

We begin, as we must, with the jurisdictional question. A party who wishes to appeal a judgment or order in a civil case must file a notice of appeal "within thirty days after the entry of such judgment, order or decree." The statutory time limit "is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). In limited circumstances the district court may upon motion extend or reopen the time for appeal, *see* 28 U.S.C. § 2107(c), but Upchurch did not pursue this option. So if his notice of appeal was filed outside the 30-day window required by § 2107(a), we must dismiss the appeal for lack of jurisdiction.

The timeliness question turns on whether the July 26 order or the August 4 judgment is the operative "entry" for purposes of the statutory deadline. If the judge's July 26 order triggered the countdown, then Upchurch's appeal is untimely because he did not file his notice of appeal within the 30-day statutory deadline from that date. But if the August 4 judgment provides the relevant date, then the appeal is timely.

The Federal Rules of Appellate Procedure provide the starting point for determining which date governs. Rule 4 starts the timer for filing a notice of appeal upon the "entry of the judgment or order appealed from." FED. R. APP. P. 4(a)(1)(A); *see also Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 361 (7th Cir. 2009). Rule 4 also tells us that Rule 58 of the Federal Rules of Civil Procedure, which specifies the procedures for entering judgment and sometimes requires a separate document, affects how we decide when the relevant entry occurs. When Rule 58 requires a separate document to enter judgment, Rule 4 starts the appeals clock at the earlier of two occurrences: when the separate document is entered or when 150 days have run since the order or judgment was entered in the civil docket. *See* FED. R. APP. P. 4(a)(7)(A)(ii). But when Rule 58 does *not* require a separate document, the clock starts "when the judgment or order is entered in the civil docket." *Id.* 4(a)(7)(A)(i).[2]

---

[2] We recognize that the Federal Rules of Appellate Procedure are not jurisdictional when they impose time prescriptions that are "absent from the U.S. Code." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 27 (2017). We also recognize that Rule 4 refers to the entry of a judgment or order "for purposes of this Rule 4(a)." FED. R. APP. P. 4(a)(7)(A). But the mere involvement of the Federal Rules of Appellate and Civil Procedure does not eliminate the jurisdictional character of the timeliness question presented here, which turns on compliance with § 2107(a)—a "time prescription … imposed by Congress." *Hamer*, 583 U.S. at 27. In other words, a jurisdictional requirement is still jurisdictional even if federal rules—which may not be jurisdictional themselves—inform our analysis of compliance with that requirement. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978) ("The sole purpose of the separate-document requirement, which was added to Rule 58 in 1963, was to clarify when the time for appeal under 28 U.S.C. § 2107 begins to run."); *Wis. Cent. Ltd. v. TiEnergy, LLC*, 894 F.3d 851, 854 (7th Cir. 2018) (Barrett, J.) ("Rule 58's 'separate

So where does this leave us? The timeliness of the appeal depends on whether the judge's July 26 order—which granted the requests for attorney's fees pursuant to the sanctions order and set the award amounts—required a separate judgment under Rule 58. If it did, then August 4 is the operative date because that's when the judge "set forth" the July 26 order "on a separate document." FED. R. APP. P. 4(a)(7)(A)(ii). But if it did not require a separate judgment document, then the July 26 order itself is the relevant entry for assessing compliance with § 2107(a).[3]

Although Rule 58(a) generally requires that "[e]very judgment … be set out in a separate document," some orders are exempt. Specifically, "a separate document is not required for an order disposing of a motion for attorney's fees under Rule

---

document' requirement is important because it keeps *jurisdictional* lines clear." (emphasis added)). To enforce § 2107(a)'s jurisdictional requirement, we must decide which docket entry triggered the 30-day clock, and doing so requires analysis of the federal rules. But the overarching timeliness issue remains jurisdictional. *See Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1072 (9th Cir. 2020) (explaining that the 30-day period for appealing is jurisdictional because it is "based in statute" and that the "Federal Rules of Appellate and Civil Procedure work in combination to set forth the rules governing when notices of appeal must be filed"); *Leavy v. Hutchison*, 952 F.3d 830, 831–32 (6th Cir. 2020) (per curiam) (dismissing for lack of jurisdiction after consulting Rule 4 and Rule 58 to determine "which document starts the clock"); *United States v. Bradley*, 882 F.3d 390, 394 (2d Cir. 2018) (same).

[3] If Rule 58(a) did not require a separate document, the mere fact that the judge entered a judgment on August 4 with no material differences would not restart the time to appeal. *See Leavy*, 952 F.3d at 831 ("That the district court later entered a formal judgment … does not change the appeal deadline or restart the clock."); *see also Groves v. United States*, 941 F.3d 315, 324 (7th Cir. 2019) (Barrett, J.).

54." FED. R. CIV. P. 58(a)(3). The O'Briens and Lucareli argue that the judge's July 26 order falls squarely within this exception.

As we've noted, Upchurch completely failed to engage with the relevant inquiry. He did not address the interaction between Rule 4 and Rule 58, and his reply brief selectively quotes § 2107 to suggest that only "judgments" can trigger the 30-day clock. But the statute, of course, refers to "any judgment, *order* or decree." § 2107(a) (emphasis added). Because our jurisdiction is at issue, however, we consider a potential wrinkle that Upchurch has not identified: Does it matter that the judge awarded attorney's fees under Rule 11 and Rule 37 rather than "under Rule 54" explicitly?

It does not. Under our precedent, the request for attorney's fees need not arise under Rule 54 expressly for the Rule 58(a)(3) exception to apply. In *Feldman v. Olin Corporation*, 673 F.3d 515, 516–17 (7th Cir. 2012), sanctioned attorneys contended that Rule 58(a)(3) was inapplicable because "the award of fees against them was based in part on Rule 11" and therefore was "outside the scope of Rule 54." We rejected this argument, reasoning that Rule 54 is "the rule on judgments" and "makes awards of attorneys' fees one *type* of judgment." *Id.* at 517 (emphasis added). And Rule 58(a)(3)'s reference to Rule 54 merely "designates" that "type of judgment" as one "for which a separate judgment document is not required." *Id.* We observed, importantly, that "Rule 54 does not create a right to seek attorneys' fees." *Id.* Rather, the right to seek an award of attorney's fees is found elsewhere in the statutes and rules. *Id.* We saw no reason why some orders disposing of fee requests "should be subject to one [appeal] deadline" and other orders "subject to another" depending on the basis—

whether found in a statute or rule—for granting attorney's fees. *Id.* In sum, the Rule 11 sanction in *Feldman* "took the form of an order to pay attorneys' fees," so it was "under Rule 54" for purposes of Rule 58(a)(3). *Id.*

Although this is not a frequently litigated issue, our distillation of the interaction between these rules in *Feldman* is not an outlier. *See Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 40–42 (2d Cir. 2013) (citing *Feldman* favorably and holding that "a final order solely on the issue of attorneys' fees is appealable without entry of a separate document"); 2 STEVEN S. GENSLER & LUMEN N. MULLIGAN, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, RULE 58, at 224 n.18 (Feb. 2023 update) (citing *Feldman* and noting that while "the relationship between Rule 58 and Rule 54 is confusing … , the end result is simple: fee orders do not require a separate document of judgment, so the time to appeal them starts to run as soon as the order is entered on the docket").

Applying *Feldman*, the judge's July 26 order finally disposing of the motions for attorney's fees did not require a separate document, so it provides the relevant date for assessing the timeliness of Upchurch's appeal. This means that Upchurch's notice of appeal—filed on August 31—was too late. The appeal must be dismissed for lack of jurisdiction.

That leaves the motion for appellate sanctions under Rule 38. Because a Rule 38 sanctions request is not a merits determination, we may consider it even though we lack jurisdiction over Upchurch's appeal. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 632–33 (7th Cir. 2018) (dismissing an appeal for lack of jurisdiction but considering a request for Rule 38 sanctions); *cf. Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) (explaining that a Rule 11 sanction "is not a judgment on the

merits," so it "does not raise the issue of a district court adjudicating the merits of a case or controversy over which it lacks jurisdiction" (quotation marks omitted)). As we've noted, Upchurch did not respond to the motion for Rule 38 sanctions in his opening brief. His reply brief is also silent on the subject, even though the O'Briens and Lucareli devoted an entire section of their joint response brief to the request for sanctions.

Given the lack of response, we can be brief. Rule 38 permits us to sanction an appellant or his attorney when an appeal is frivolous. *See Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 701 (7th Cir. 2014). "An appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." *Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 544 (7th Cir. 2018) (quotation marks omitted). When that's the case, Rule 38 sanctions serve "to compensate the appellee for the time and resources wasted in defending against a plainly baseless appeal." *Id.* at 545.

This appeal is frivolous in more ways than one. Upchurch's opening brief and reply, spanning fewer than eight combined pages, utterly failed to articulate a coherent argument on the jurisdictional issue. He did not engage at all with the central question of the exception to the separate-document requirement under Rule 58(a)(3). And the lone reference to § 2107 is a misleading quotation suggesting that only a "judgment" may start the appeals clock, even though the statute plainly states that an "order" may do so too. § 2107(a) ("[N]o appeal shall bring any judgment, *order* or decree in a[] [civil case] … unless notice of appeal is filed, within thirty days after the entry of such judgment, *order* or decree." (emphases added)).

Provis's merits argument on his client's behalf is largely unintelligible. He insists that "Eighth Amendment (Excessive Fines Clause) Due Process" required the judge to hold a hearing before imposing sanctions. The Eighth Amendment, of course, does not have a due-process clause, and the Excessive Fines Clause has no bearing on this case, as Provis conceded in his reply brief. His Fifth Amendment due-process argument amounts to a "bald conclusion," *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 691 (7th Cir. 2018), that the judge had a constitutional duty to hold a hearing before imposing sanctions. But Provis's tardy request for a hearing, which came *after* the judge had *already* addressed the substance of the sanctions motions, failed to explain what a hearing would accomplish or why one was required. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000) ("Since a court is not invariably required to provide a hearing before imposing sanctions, the appellants' failure to request a hearing waives any right they might have had to one."). Provis's argument about the lack of a hearing is procedurally and substantively frivolous.

In short, after making the O'Briens and Lucareli spend time and money dealing with a lawsuit that "should never have seen the light of day," Upchurch and Provis prolonged this vexatious litigation by requiring them to defend a frivolous appeal challenging the district judge's sanctions order—"the capstone of litigation that is hollow in every particular." *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 506 (7th Cir. 2000) (quoting *Greening v. Moran*, 953 F.2d 301, 307 (7th Cir. 1992)).

Rule 38 sanctions are amply justified. We will follow the district judge's lead in making Provis and Upchurch jointly

and severally liable for the costs and reasonable attorney's fees required to defend this frivolous appeal. Even if Upchurch insisted that Provis keep this frivolous litigation going through appellate review, Provis had a "legal duty *not* to yield to such importuning[], and he open[ed] himself to sanctions" when he failed to do his duty. *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 458 (7th Cir. 2005).

Accordingly, the appeal is dismissed for lack of jurisdiction. Provis and Upchurch are jointly and severally liable for the costs and reasonable attorney's fees incurred in defending the appeal. Within 15 days, the O'Briens and Lucareli may submit an accounting of their fees and costs. The clerk of court shall send a copy of this opinion, and the district court's sanctions order, to the Wisconsin Office of Lawyer Regulation for any action it deems appropriate.

DISMISSED FOR LACK OF JURISDICTION, WITH SANCTIONS